## ARKANSAS NATURAL GAS COMPANY *v.* ARKANSAS RAILROAD COMMISSION ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

No. 500. Argued February 21, 1923.—Decided March 19, 1923.

1. The power of a State to abrogate private contracts touching the rates of public utilities exists only as an incident to the regulation of such utilities and their rates in the public interest. P. 382.
2. A statute will be construed if possible to uphold it as constitutional. P. 383.
3. A statute of Arkansas, transferring to the Railroad Commission jurisdiction formerly possessed by the Corporation Commission, including pending cases, but denying power to modify or impair existing contracts for supplying natural gas, *construed* as not singling out a particular gas company whose claim, that divisional rates fixed by contract between it and distributers were inadequate, was pending before the latter Commission. *Id.*
4. An exception in a statute will not be taken as intended and operating to work an arbitrary discrimination against a particular party, when it may be construed as a general one and nothing appears to prove either that there are not other cases within its purview or that it is based on arbitrary classification. P. 384.

Affirmed.

APPEAL from a decree of the District Court denying, in part, an application for a preliminary injunction.

*Mr. W. B. Smith,* with whom *Mr. J. M. Moore, Mr. John S. Weller, Mr. John O. Wicks, Mr. J. Merrick Moore* and *Mr. H. M. Trieber* were on the briefs, for appellant.

*Mr. E. J. Dimock* and *Mr. Ashley Cockrill,* with whom *Mr. Henry M. Armistead, Mr. Max Pam, Mr. Harry*

*Boyd Hurd, Mr. William H. Martin* and *Mr. Lewis L. Delafield* were on the briefs, for appellees.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

The appellant brought suit in the District Court, alleging that an order of the Arkansas Railroad Commission was invalid as establishing confiscatory rates for natural gas furnished to its consuming customers and as maintaining certain divisional rates, (alleged to be wholly inadequate) fixed by contracts between appellant and the Little Rock Gas & Fuel Company and the Consumers' Gas Company. An interlocutory injunction was sought under § 266 of the Judicial Code. The court granted the injunction in respect of the rates to consumers but denied it as to the divisional rates. The appeal brings here for review only the action of the lower court in the latter respect.

By the divisional contracts referred to, appellant, in consideration of the payment to it of a stated proportion of the rates collected, agreed to furnish gas to the two companies named, to be by them distributed to their customers in the cities of Little Rock and Hot Springs, respectively. The gas was to be delivered at the intake of the distributing systems for these cities. Appellant asserts that the income afforded by the rates prescribed by these contracts is so inadequate as to have the effect of a virtual confiscation of its property, and that this result is in large part due to improper and wasteful methods of distribution on the part of the two distributing companies.

The Commission was asked to fix a flat rate, called a city gate rate, for the gas delivered at the city borders, the effect of which, of course, would have been to abrogate the contract rates based upon a percentage of the collections. Appellant's application was made to the Arkansas Corporation Commission, but was decided by the Railroad

Commission, to whom the Legislature in the meantime had transferred jurisdiction. There is no claim that rates to consumers were affected by these contracts; nor does it appear that the public interest is involved in the action which the Commission was asked to take.

The Railroad Commission denied the application primarily upon the ground that the power to grant it had been expressly withheld by the act of the Legislature, known as Act 443, passed on March 25, 1921 (Acts of Arkansas, 1921, p. 429), transferring to it the jurisdiction theretofore possessed by the Corporation Commission, and providing that the Railroad Commission " shall have no jurisdiction or power to modify or impair any existing contracts for supplying gas to persons, firms, corporations, municipalities or distributing companies, and such contracts shall not be affected by this act or the act of which this is an amendment." The act is copied in the margin.[1]

---

[1] "All records, papers, furniture and stationery under the control of the Arkansas Corporation Commission at the time of the passage of the act of which this is an amendment, shall be turned over to the Arkansas Railroad Commission and remain in its custody, and all investigations, proceedings and hearings that were pending before the Arkansas Corporation Commission at the time of the passage of the act of which this is an amendment, and the hearings of which are embraced within the powers conferred on the Arkansas Railroad Commission, shall be transferred to the Arkansas Railroad Commission for such consideration, orders and determination as may be made by it under the terms of the act of which this is an amendment, and the petitions pending before the Arkansas Corporation Commission at the time of the passage of the act of which this is an amendment, involving regulations of service and rates for natural gas, and numbered 417, 418 and 423 on the records of said Arkansas Corporation Commission, are transferred to the Arkansas Railroad Commission for decision and the making of such orders and rates as may be appropriate, and the Arkansas Railroad Commission shall consider the testimony that has heretofore been taken in said cases and hear such further testimony as may be appropriate to fully present such

The question whether, in the absence of the statute—it being made to appear that the stipulated consideration was grossly inadequate—the commission, under the circumstances disclosed by the record, would have been under a duty to fix gate rates in contravention of the contracts, may be put aside with brief consideration. While a State may exercise its legislative power to regulate public utilities and fix rates, notwithstanding the effect may be to modify or abrogate private contracts (*Union Dry Goods Co.* v. *Georgia Public Service Corp.,* 248 U. S. 372, 375; *Producers Transportation Co.* v. *Railroad Comm.,* 251 U. S. 228, 232) there is, quite clearly, no principle

---

cases, and such orders and rates as may be made by the Arkansas Railroad Commission in the said gas cases shall apply not only to the service outside of municipalities, but also to the service and rates for supplying natural gas within municipalities or to distributing companies operating within such municipalities, except that the Arkansas Railroad Commission shall have no jurisdiction or power to modify or impair any existing contracts for supplying gas to persons, firms, corporations, municipalities or distributing companies, and such contracts shall not be affected by this act or the act of which this is an amendment.

" From the decisions of the Arkansas Railroad Commission in such cases appeals may be prosecuted to the circuit court and Supreme Court, and such appeals shall be taken, proceeded in, heard and disposed of as provided in sections 20 and 21 of the act of which this is an amendment; *provided, however,* that on the determination of such natural gas cases by the Arkansas Railroad Commission and the decision on any appeals therefrom and the making of orders by the commission in pursuance to orders of the court made on such appeals, the powers and jurisdiction of the Arkansas Railroad Commission to regulate these particular utilities and fix their rates shall be such only as is conferred by other sections of the act of which this is an amendment. In all cases where the Arkansas Corporation Commission made a final decision or order before the act of which this is an amendment became effective and the time for an appeal has not elapsed, any party to said proceedings shall have the right to have the matter heard on appeal as is provided in sections 20 and 21 of the act of which this is an amendment."

which imposes an obligation to do so merely to relieve a contracting party from the burdens of an improvident undertaking. The power to fix rates, when exerted, is for the public welfare, to which private contracts must yield; but it is not an independent legislative function to vary or set aside such contracts, however unwise and unprofitable they may be. Indeed the exertion of legislative power solely to that end is precluded by the contract impairment clause of the Constitution. The power does not exist *per se.* It is the intervention of the public interest which justifies and at the same time conditions its exercise.

But the appellant contends that the statute violates the Fourteenth Amendment because it imposes restrictions upon the rate-making power of the commission in respect of the particular contracts of appellant here involved, which, it is said, are not imposed in the case of contracts of other utility corporations. In other words, it is urged that the act singles out the appellant for special restraint in this respect and is, therefore, unequal. While its meaning is not free from doubt, we do not so construe the act. The rule is fundamental that if a statute admits of two constructions, the effect of one being to render the statute unconstitutional and of the other to establish its validity, the courts will adopt the latter. *St. Louis Southwestern Ry. Co.* v. *Arkansas,* 235 U. S. 350, 369. The language of this act is general. By its terms jurisdiction over all proceedings and hearings then pending before the Corporation Commission is transferred to the Railroad Commission. There follows a provision particularizing certain petitions numbered 417, 418 and 423, being the cases of appellant, as to which the Railroad Commission is directed to consider the testimony theretofore taken by the Corporation Commission and to hear such further testimony as may be appropriate to fully present such cases. The paragraph then concludes with

the exception, already quoted, to the effect that the Railroad Commission shall have no power to modify or impair existing contracts for supplying gas, etc. Considering the several provisions of the act together, its terms fairly justify the conclusion that the exception was meant to apply to all proceedings pending before the Corporation Commission transferred to the Railroad Commission and not alone to the three specified cases. The record contains nothing to indicate the character or number of these proceedings and nothing to suggest that their grouping or subjection to the rule of the exception constitutes an unreasonable or arbitrary classification. The reasons which influenced the classification are not disclosed on the face of the act, but the mere absence of such disclosure will not justify the Court in assuming that appropriate reasons did not in fact exist. The presumption is that the action of the legislature—which applies alike to all falling within the class—was with full knowledge of the conditions and that no arbitrary selection of persons for subjection to the prescribed rule was intended. See *Atchison, Topeka & Santa Fe R. R. Co.* v. *Matthews,* 174 U. S. 96, 106.

The state legislature is vested with a wide discretion in the matter and interference by this Court may not be had merely because its exercise has produced inequality— every selection of subjects or persons for governmental regulation does that—but only where it has produced an inequality which is actually and palpably unreasonable and arbitrary. See *Bachtel* v. *Wilson,* 204 U. S. 36, 41; *Orient Insurance Co.* v. *Daggs,* 172 U. S. 557, 563; *Erb* v. *Morasch,* 177 U. S. 584, 586; *Missouri, Kansas & Texas Ry. Co.* v. *May,* 194 U. S. 267, 269; *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, 293; *Heisler* v. *Thomas Colliery Co.,* 260 U. S. 245.

Applying the rule established by these and other decisions of this Court, the decree below is

*Affirmed.*