LUDINGTON v. McCAUGHN, Collector of Internal Revenue.*

(Circuit Court of Appeals, Third Circuit. October 1, 1924.)

No. 3087.

1. **Internal revenue ⟨⟩7—Congress not limited by Constitution in matter of allowing deduction of losses from taxable income.**

Under Const. Amend. 16, there is no limitation on power of Congress in matter of allowing deduction of losses in computation of incomes taxable.

2. **Statutes ⟨⟩188—In absence of constitutional limitation, no reason for restricted construction or failure to give words plain meaning.**

Where there is no constitutional limitation to be enforced, nor constitutional doubt to be avoided, no reason exists for restricted construction of statute, nor for construction which fails to give language its plain meaning and import.

3. **Internal revenue ⟨⟩7—Losses sustained on property owned March 1, 1913, held computable on value as of that date rather than actual cost.**

Under Revenue Act 1918, particularly section 214(a) being Comp. St. Ann. Supp. 1919, § 6336⅛g, authorizing deduction from taxable income of losses sustained, and providing that, for purpose of ascertaining loss sustained from sale of property, the basis shall be, in case of property acquired before March 1, 1913, fair market price or value as of that date, where plaintiff before March 1, 1913, purchased stock for $32,500, which on that date was worth $37,050, but which in 1919 he sold for $3,866.91, *held*, he was entitled to compute his deductible loss on basis of value on March 1, 1913, rather than actual cost, in literal accord with the statute.

4. **Constitutional law ⟨⟩45—Where statute clear and constitutional, court's sole function is to enforce.**

Where statute is clear and constitutional, sole function of court is to enforce it according to its terms.

*Certiorari granted 45 S. Ct. 127, 69 L. Ed. —.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Charles L. McKeehan, Judge.

Action by Charles H. Ludington against Blakely D. McCaughn, United States Collector of Internal Revenue. Judgment for defendant (290 F. 604), and plaintiff brings error. Reversed, and new trial directed.

Weill & Blakely and Ralph B. Evans, all of Philadelphia, Pa. (William D. Guthrie, Hugh Satterlee, and William R. Perkins, all of New York City, and J. S. Y. Ivins, of Albany, N. Y., of counsel), for plaintiff in error.

Nelson T. Hartson, Sol. of Internal Revenue, and John B. Milliken, Sp. Atty. Bureau of Internal Revenue, both of Washington, D. C., George W. Coles, U. S. Atty., of Philadelphia, Pa., and Preston Carter Alexander, of Washington, D. C., for defendant in error.

Before WOOLLEY and DAVIS, Circuit Judges, and SCHOONMAKER, District Judge.

WOOLLEY, Circuit Judge. This case calls for an interpretation of Sections 214 (a) and 202 (a) of the Revenue Act of 1918 (40 Stat. 1060–1067 [Comp. St. Ann. Supp. 1919, §§ 6336⅛g, 6336⅛bb]) allowing deductions in an income tax return for losses sustained and prescribing the method by which they shall be ascertained. The facts, briefly stated, are these:

Prior to March 1, 1913, Charles H. Ludington purchased shares of stock of two corporations for $32,500. In 1919 he sold them for $3,866.91, thereby sustaining a loss of $28,633.09. In making his income tax return for the year in which the sale occurred and conceiving that he was entitled to a deduction for the loss involved, he turned to the law for guidance. This was the Revenue Act of 1918, now superseded by other acts. He found (by Sections 210 and 211 [Comp. St. Ann. Supp. 1923, §§ 6336⅛e, 6336⅛ee]) that upon his "net income" there should be levied, collected and paid for the taxable year a normal tax and a surtax at named rates. From Section 212 (a), being Comp. St. Ann. Supp. 1923, § 6336⅛f) he learned that "the term 'net income' means the gross income as defined by Section 213 (Comp. St. Ann. Supp. 1923, § 6336⅛ff), less the deductions allowed by Section 214."

Section 214 (a) provided that

"In computing net income there shall be allowed as deductions: * * *

"(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business. * * *"

From this it was clear that the statute allowed Ludington to deduct his loss in computing taxable net income. It was equally clear that the statute did not allow him to calculate his loss in any way he chose, not even in the ordinary way of subtracting selling price from cost price, but prescribed a method of its own. This appeared in Section 202 (a) and was as follows:

"That for the purpose of ascertaining the *gain derived* or *loss sustained* from the sale or other disposition of property, real, personal, or mixed, the basis shall be—

"(1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date; and

"(2) In the case of property acquired on or after that date, the cost thereof."

Reading this provision literally Ludington inquired the fair market value of his shares on March 1, 1913, and learned that the shares of both stocks had risen from their purchase price and, together, had on that date a market value of $37,050. He now had all the factors for any kind of calculation. What he did was to follow the words of the statute. He took $37,050, the market value of the shares on March 1, 1913, as the "basis" of his computation and from this figure subtracted $3,866.91, the selling price in 1919, leaving a balance of $33,183.09. This was his loss ascertained by the formula prescribed by the statute which, as it happened, was $4,550 larger than his actual loss. He deducted the statutory loss and filed his return accordingly.

The Commissioner of Internal Revenue, however, declined to recognize the fair market value of the shares on March 1, 1913, as the basis for ascertaining the loss sustained and, reducing the estimated loss by the sum of $4,550, he brought it down to actual loss and assessed upon the net income, thus increased, an additional tax of $3,094. The Commissioner grounded this action upon an amendment to Article 1561 of Regulation 45 adopted July 28, 1921, which, in computing loss, substituted cost in place of the statutory basis of market value as of March 1, 1913, *where the market value as of that date is greater than the cost.* Ludington paid the additional tax under protest and

after the usual procedure brought this suit to recover the amount thereof. On affidavit of defense in the nature of a demurrer filed to the statement of plaintiff's claim, the court entered judgment for the defendant. The case is here on the plaintiff's writ of error.

The precise question in issue at the trial and now on review may be stated thus: Under the Revenue Act of 1918, where property acquired prior to March 1, 1913, at a price less than the fair market value on March 1, 1913, is sold by the taxpayer in 1919 at an actual loss, is the amount which the taxpayer may deduct by reason of such loss to be determined upon the basis of cost of the property or upon the basis of its fair market value as of March 1, 1913?

In construing the provision in question the learned trial court gave thought to the meaning of the Sixteenth Amendment and looked for the intention of Congress. It found that the power which the Amendment granted Congress extends only to taxation of income and then only of income accrued after the adoption of the Amendment; that income involves gains derived and losses sustained in the sale of property; and that by force of subsequent enactments, and particularly of the Revenue Act of 1918, the fair market value as of March 1, 1913, was accepted as the basis of their computation. But, as the Supreme Court in Goodrich v. Edwards and Walsh v. Brewster, 255 U. S. 527 and 536, 41 Sup. Ct. 390 and 392, 65 L. Ed. 758 and 762, had construed a provision of the Revenue Act of 1916 (39 Stat. 756, 758, § 2c [Comp. St. § 6336b]) with respect to the method of ascertaining the "gain derived" from the sale of property, which was the same in substance as the provision here in question, and had limited "gain derived" to *actual* gain realized after March 1, 1913, and as the section here in question made the same provision for ascertaining "loss sustained" as for ascertaining "gain derived," the learned trial court viewed taxable gain and deductible loss as correlative and interdependent subjects limited alike by the same legislative intention. It therefore held that, as under the decisions cited a gain derived from the sale of property means actual gain, distinguished from a statutory or fictitious gain, so loss sustained in the sale of property means actual loss, reckoned on the factors of cost price and selling price, not a loss ascertained by following literally the words of the statute. Was this the intention of Congress?

The Sixteenth Amendment to the Consti-

tution was promulgated by the Secretary of State on February 25, 1913. As is familiar knowledge, when Congress in the same year came to draft income tax legislation in pursuance of the authority thereby conferred, it concluded that it could not constitutionally tax as income any increment or increase in value of property which had accrued prior to March 1, 1913. This conclusion was based upon the theory that all increment or increase in value accrued up to that date should be regarded as capital value and not income because prior to that date Congress had no power to levy an unapportioned tax upon income derived from property, as held in Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 15 S. Ct. 673, 39 L. Ed. 759, and 158 U. S. 601, 15 S. Ct. 912, 39 L. Ed. 1108. Congress consistently followed this theory in the Revenue Acts of 1913 (Comp. St. 1913, §§ 6319 et seq.), 1916 (Comp. St. 1918, §§ 6336b et seq.), 1918 (Comp. St. Ann. Supp. 1919, § 6336⅛bb), and 1921 (Comp. St. Ann. Supp. 1923, § 6336bb) by making the fair market price or value of property as of March 1, 1913, the basis for determining the gain derived from its sale or disposition. Some of these acts, in different terms, likewise made the fair market price or value as of March 1, 1913, the basis for ascertaining "loss sustained" in the sale of property acquired before that date. It was thought, therefore, that if a gain, increment, or increase of value, accruing before March 1, 1913, was to be treated by Congress as capital value and as such not constitutionally taxable as income, it followed, quite reasonably, that the value of property on that date should likewise be treated as capital value for the purpose of ascertaining deductible loss.

But in the administration of the income tax laws it was found that sometimes the value of property of a taxpayer on March 1, 1913, the effective date of the act, was less than its cost, and when later sold at a profit there immediately arose a question how in such case was the taxable gain to be ascertained, for it is obvious that if reckoned on its lesser value of that date the estimated gain would be greater than the actual gain and, entering into income, the tax would be levied upon income which, in part, was not income at all. The Internal Revenue Bureau ruled that it was the intention of Congress to tax as "net income" not simply the gain over cost but a statutory or unrealized profit resulting from taking the market value as of March 1, 1913, as the basis of the calculation. This would result,

as we have said, in taxation of a greater profit than was actually realized. When this sitaution came before the Supreme Court (under the Revenue Act of 1916), it was urged that as Congress could not constitutionally tax as income what was not in fact income, the Act must be construed so as to restrict the enactment within its constitutional limitation of power; and that Congress could not levy an income tax where no gain in fact existed as compared with original cost, because in final analysis such tax would be unconstitutional in that it would be practically upon and would have to be paid out of capital, and therefore, be a property tax as distinguished from an income tax, and void because not apportioned as required by the Constitution in respect to all direct taxes. Pollock v. Farmers' Loan & Trust Co., 158 U. S. 601, 637, 15 Sup. Ct. 912, 39 L. Ed. 1108. Responding to this argument the Supreme Court in the Goodrich and Walsh Cases (following logically its definition of "income" in Eisner v. Macomber, 252 U. S. 189, 207, 40 Sup. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570) held that where the value of previously acquired property was on March 1, 1913, less than the cost, the gain derived upon a subsequent sale should be limited to the actual gain, saying:

"It is thus very plain that the statute imposes the income tax on the proceeds of the sale of personal property to the extent only that gains are derived therefrom by the vendor."

In thus construing the Revenue Act of 1916 the Supreme Court evidently did not regard its language so clear as to require literal interpretation, but was prompted, in accordance with its settled rule, to adopt this restricted construction in order to avoid constitutional doubt. United States v. D. & H. Co., 213 U. S. 366, 407–408, 29 Sup. Ct. 527, 53 L. Ed. 836; Texas v. E. T. R. R. Co., 258 U. S. 204, 207, 42 Sup. Ct. 281, 66 L. Ed. 566; Arkansas Gas Co. v. Railroad Comm., 261 U. S. 379, 383, 43 Sup. Ct. 387, 67 L. Ed. 705.

[1] While in the language of the statute in respect to a taxable gain derived from the sale of personal property there was manifestly a constitutional question, no such question can be found in its language in respect to a loss which the statute authorizes the taxpayer to deduct in ascertaining taxable income. No mention of losses is made in the Sixteenth Amendment, and there is no constitutional limitation upon the power of Congress in respect to the allowance of losses. Congress may allow or disallow them at will and upon any basis. Taxable gain is a constitutional concept denoting income which the taxpayer has derived, while deductible loss is a creation of Congress, varying from time to time as Congress deals with it in different ways.

[2] Reading the decisions of the Supreme Court in the Goodrich and Walsh Cases as interpretations of the law only with reference to taxable gains—the subject of deductible losses was not touched—and believing that Congress is free to make its own definition of deductible losses, it follows that in construing the provision with reference to "loss sustained" here in question, there is no constitutional limitation to be enforced and no constitutional doubt to be avoided, and hence no reason for restricted construction or for any construction which fails to give the words of the statute their plain meaning and import. United States v. Standard Brewery Co., 251 U. S. 210, 217, 40 Sup. Ct. 139, 64 L. Ed. 229; MacKenzie v. Hare, 239 U. S. 299, 308, 36 Sup. Ct. 106, 60 L. Ed. 297, Ann. Cas. 1916E, 645; Caminetti v. United States, 242 U. S. 470, 485, 37 Sup. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168; Russell Motor Car Co. v. United States, 261 U. S. 514, 519, 43 Sup. Ct. 428, 67 L. Ed. 778.

[3] The defendant urges upon the ground of consistency that as the Supreme Court has construed the word "gain" to mean actual gain as distinguished from statutory gain, the word "loss" should be construed to mean actual loss as distinguished from loss of the kind described in the words of the statute. Such identity of meaning in these provisions would, perhaps, be consistent if Congress had made it so. But Congress was free to make the provisions inconsistent if it chose. This is evidenced by the manner in which it has dealt with deductible losses in other income tax legislation. The Income Tax Acts of the Civil War period, the Revenue Act of 1894, 28 Stat. 553, § 27 et seq. (held unconstitutional), the Revenue Act of 1913 allowed no deduction whatever for losses sustained from the sale of property of the kind involved in this case, although such losses might exceed the gains or profits derived from all other sources. The Revenue Act of 1916 allowed the deduction only of "the losses actually sustained therein during the year to an amount not exceeding the profits arising therefrom." The Revenue Act of 1918 was the first income tax law which allowed a deduction of

loss however sustained, and it omitted the qualification of the word "actually" in the phrase "actually sustained" in the Act of 1916 as well as the limitation therein "to .an amount not exceeding the profits arising therefrom." If Congress was free to omit and to vary provisions for deductible losses in different revenue acts without relation to corresponding provisions for taxable gains, we think it had power to do the same thing in this act. Feeling that in this regard the power of Congress was not limited, we are constrained to construe the words "loss sustained" in the section in question literally and to hold that they mean just what they .say, even though, as in this instance, the loss sustained, ascertained in the manner prescribed by the statute, is greater in figures than it is in money and the effect of its deduction from gross income is to decrease net income below its actual level.

[4] We are driven to this conclusion, startling as it may seem, because we cannot hold that Congress did not mean what it said and also because, the language of a statute being plain and its meaning clear and the statute itself being within the constitutional authority of the law-making body which passed it, our sole function is to enforce the law according to its terms. Lake County v. Rollins, 130 U. S. 662, 670, 671, 9 Sup. Ct. 651, 32 L. Ed. 1060; Caminetti v. United States, 242 U. S. 470, 485, 37 Sup. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168.

The judgment of the District Court is reversed and a new trial directed.