## GARYSBURG MFG. CO. v. PENDER COUNTY et al.

District Court, E. D. North Carolina, Raleigh Division.

July 5, 1930.

501

Rountree & Carr, of Wilmington, Del., and Spruill & Spruill, of Rocky Mount, N. C., for complainant.

McCullen & McCullen, of Burgaw, N. C., for respondent.

MEEKINS, District Judge.

This cause is before me on the pleadings —bill and answer—and the affidavit of J. Ross McNeal, former vice president, and at present secretary and treasurer, of the Garysburg Manufacturing Company. The facts, though long, and perhaps tedious, are plain

and more or less admitted—mostly admitted, and are as follows:

(a) That the complainant, the Garysburg Manufacturing Company, hereinafter called complainant, is a corporation duly organized and existing under the laws of this state, and has its plant and principal office in the town of Burgaw, in the county of Pender, in the state of North Carolina.

(b) That complainant duly filed with the state board of assessment its annual report for the year 1925, by which it was shown that the total actual cash value of its capital stock for that year was $350,000, and that the assessed value of real property listed with local assessors for that year was $21,855, and the assessed value of personal property listed with local assessors was $88,701.63, a total of $110,556.63, which, deducted from the total valuation of $350,000, left a "corporate excess" of $239,443.37, and the state board of assessment accepted the report as correct, both as to the items of property owned by complainant and their valuation, and certified down to the county of Pender an account showing that the "corporate excess" of complainant amounted to the sum of $239,443.37.

(c) That in that account so certified by the state board of assessment to the county of Pender, hereinafter called respondent county, was included 225 shares of the capital stock of the Argent Lumber Company, a corporation of the state of South Carolina, and which shares of stock were worth the sum of $225,000, and were so reported in the certificate of the state board of assessment.

(d) That respondent county undertook to levy a tax, at the rate of 2 per centum, upon the total sum of $230,443.37 so certified down by the state board of assessment, and which included the sum of $225,000, the par and actual value of the 225 shares of the capital stock of the Argent Lumber Company of South Carolina, and directed the sheriff of respondent county, the respondent J. T. Brown, hereinafter called respondent Brown, to proceed to collect the same, and respondent Brown demanded from complainant the sum of $4,788.86, which was the total amount of tax on the whole sum of $239,443.37, at the tax rate of 2 per centum, which was the rate fixed for the year 1925, and threatened to seize and sell by public auction the property of complainant, unless the tax was promptly paid.

(e) That complainant refused to pay the tax upon the 225 shares of stock in the Argent Lumber Company of South Carolina, but tendered, and still tenders, the sum of $288.87, the amount of the tax due at the rate of 2 per centum upon $14,443.37, the amount of the "corporate excess" in excess of the value of the shares of stock in the Argent Lumber Company of South Carolina, upon the ground that the 225 shares of stock was property owned by complainant in a South Carolina company, and under the law of North Carolina had its situs in South Carolina, and was not taxable if owned by an individual resident of the state of North Carolina.

(f) That respondent county declined to accept this tax and respondent Brown threatened to seize and sell the property of complainant for the purpose of paying the tax on the whole amount of the "corporate excess," including the $225,000 worth of shares of stock in the Argent Lumber Company, and complainant brought this action to enjoin such seizure and sale, claiming that the assessment and taxation of the shares in the Argent Lumber Company (shares of a foreign corporation) is a violation of the "Equal Protection" secured under the Fourteenth Amendment to the Constitution of the United States, in that like shares, if held by an individual or by an unincorporated association of citizens (owners), are not taxed by the state.

The legal question involved in this case is of public importance, because it involves the constitutionality of a tax statute of the state of North Carolina. In the last clause of the first section of the Fourteenth Amendment to the Constitution of the United States it is laid down: That no state shall deprive any person under its jurisdiction of the equal protection of the law.

■ For most purposes, and subject to some qualifications, later more fully discussed, a corporation is within the meaning and the protection of the Federal Constitutional guarantee, as well as a natural person.

■ To declare a statute of this state unconstitutional, or any authorized action under its authority illegal, is not to be lightly considered, and is to be done only upon a clear and undoubted showing and upon the most convincing authority; particularly is this true of a state statute authorizing the imposition of a state tax and the raising of state revenue.

Upon unquestioned authority, a broad and liberal latitude is allowed to the states in the matter of arranging their tax systems according to their peculiar situation, needs, and demands.

Distinctions and apparent discriminations in tax systems of the various states are largely a matter of local, political, and economic necessity, and are not to be disturbed on the mere allegation of unconstitutionality.

█ To justify their annulment, as contrary to the Constitution of the United States, there must appear an arbitrary and plain violation of both the letter and spirit of the superior law of the Union.

█ Such being the gravity of this case and some of the principles that must govern its consideration, it seems needless to quote any authority in support of the proposition, that the jurisdiction of this court must likewise clearly and affirmatively appear before it is justified in even considering the case. The question of this court's jurisdiction is raised, and must therefore be a prerequisite of any determination of the matter on the substantial issues at stake between the parties.

In this case the federal jurisdiction is invoked, under the claim of constitutional protection that is guaranteed by the Fourteenth Amendment to the Constitution of the United States. There should be a determination of the question so raised under the Fourteenth Amendment to the Constitution of the United States as to the constitutionality of the North Carolina statute, exempting stock held in foreign corporations by citizens of this state, regarded as individuals, and providing for the taxation of shares in foreign corporations held by corporations of this state, that is, by corporations incorporated in the state of North Carolina, and therefore I shall, for that purpose, assume jurisdiction and consider such question.

The particular section of the statute of North Carolina, Acts 1925, c. 101, § 4, involved in this case, is as follows: "Individual stockholders in any corporation, joint-stock association, limited partnership, or company paying a tax on its capital stock shall not be required to pay any tax on said stock or list the same, nor shall corporations legally holding capital stock in other corporations in this State, upon which the tax has been paid by the corporation issuing the same, be required to pay any tax on said stock or list the same. Nor shall any individual stockholder or any foreign corporation be required to list or pay taxes on any share of its capital stock in this State, and the situs of such shares of stock in foreign corporations, owned by residents of this State, for the purposes of this act is hereby declared to be at the place where said corpo-

ration undertakes and carries on its principal business."

Complainant, holding stock in a South Carolina corporation, was assessed on its stock under this section of the law of the state of North Carolina, and it is conceded that under such law an individual holder of such stock would not be assessed therefor in the state, under this statute. Is this discrimination between a corporate holder and an individual holder of stock in a foreign corporation an illegal discrimination, under the equal protection clause of the Fourteenth Amendment to the Constitution of the United States?

While the Supreme Court of the United States has never, so far as I am advised, decided 'the identical question here presented, it has, in a number of cases, had before it the principle involved here, and has laid down general rules of law applicable to the question that appears controlling in this case.

█ Corporations created by a state are granted by the state with certain definite and limited powers, and a corporation is therefore always subject to the reasonable control of the state, because to a fair and reasonable extent the state has the right, reserves the right, to attach certain conditions to the corporations it creates and empowers to do business.

█ While it cannot arbitrarily discriminate between corporations of the same character, between domestic and foreign corporations, not without reason, and substantial reason, or unreasonably discriminate between individuals and a corporation, the state can, in many ways, and such authority has been repeatedly upheld by the courts, grant and withhold powers from a corporation not possessed by a natural person. It can absolutely prohibit a corporation created under its jurisdiction from holding stock in other corporations. This it cannot do as to an individual. While the state can restrict, under its broad police power, individuals being directors in connected or affiliated corporations, it has not the constitutional power to prohibit an individual from holding any legal property. The state may, in the regulation of corporations, annex conditions to the exercise of their franchises that it may not attach to the duty of an individual citizen, and the state has a very broad and liberal authority to so order and arrange its tax system to the end that individual owners may be exempted on the one hand and assess or tax corporations on the other hand, such as franchise taxes and the like.

In this case, however, the question of the legal right of a North Carolina corporation to hold shares of stock in a foreign corporation, does not arise, because the very statute under consideration recognizes the right to own such shares and subjects the same to state taxation as lawful property of the corporation. But, if the state did not recognize such right of ownership, the state, while possessing the undoubted power to annex (provide) lawful and reasonable conditions, to the franchises it grants, and over which it reserves the right to amend, alter, or repeal, together with a reasonable visitorial power of examination and control, still the state does not possess such an extensive power over the property held or acquired by the corporation chartered by the state that it may violate in the matter of taxation the equal protection of the Constitution of the United States.

This doctrine is well expressed by Justice Field in the case of County of Santa Clara v. Southern Pacific Railroad Company (C. C.) 18 F. page 385, 407, as is therein laid down: "The state, may, of course, accompany its grant with such conditions as it may deem proper for the management of the affairs of the corporation which do not impinge upon * * * the federal constitution; and by the reservation clause it will retain control over the grant, and may withdraw it or modify it at pleasure. It is on this ground that the state has asserted a right to regulate the charges—the fares and freights—of corporations. But it is a novel doctrine that it can on that ground also control their property, appropriate it, burden it, and despoil them of it,·as it may choose, unrestrained by any constitutional inhibitions. That doctrine has no standing as yet in the law of this country. The property acquired by corporations is held independently of any reserved power in their charters. By force of the reservation the state may alter, amend, or revoke what it grants; nothing more. It does not grant the tangible and visible property of the companies, their roads, their roadways, road-beds, rails, or rolling stock. These are their creation or acquisition. Over them it can exercise·only such power as may be exercised through its control of the franchises of the companies, and such as may be exercised over the property of·natural persons engaged in similar business."

In the consideration of this case, in accordance with the principles of law applicable thereto, as such principles are expressed as quoted, it is necessary that there should be had some clear comprehension of what is meant by "tax classification" in the meaning of the language quoted and the Fourteenth Amendment to the Constitution of the United States.

To classify taxation is to arrange it according to recognized and well-known principles. This is generally found under two chief heads: One as to the nature of the property taxed, as real, personal, and intangible; the other as to the mode or nature of assessment of property for taxation, such as license, privilege, excise, franchise, business, corporation, inheritance, income, stamp, and inspection. The states of the Union have a wide latitude in the imposition of all these varied forms of taxation; the only limitations being under the Federal Constitution, that there shall not be a substantial discrimination in the imposition, and the general limitations of equality under the Constitution of the state. There is likewise a latitude allowed the state as to the selection of property to be taxed and the exemption in those cases founded on public interest, as exemption of property of churches, charitable institutions, public property, partial limited exemptions, for a reasonable time, to encourage enterprises and to promote the general good. It is apparent, from the very nature of it that there should be policies of taxation; that these policies should differ in accordance with local conditions and viewpoint and political as well as economic necessity.

It is not the policy of the courts, in the application of the limitations of the Fourteenth Amendment, to disturb these considerations of local policy of the states, unless compelled so to do by some arbitrary, unreasonable, and substantial discrimination in state legislation.

In the case of American Sugar Refining Company v. Louisiana, 179 U. S. page 89, 21 S. Ct. 43, 45, 45 L. Ed. 102, in which the statute under consideration laid a tax on the "business" of refining sugar and molasses, and exempted from the tax planters and farmers grinding their own sugar cane and refining their own sugar and molasses, it is by Justice Brown laid down: The power of taxation under the Fourteenth Amendment does not "prevent a state from changing its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property altogether; may impose different specific taxes upon different trades or professions; may vary the rates of excise upon various products; may tax real

and personal estate in a different manner; may tax visible property only, and not securities; may allow or not allow deductions for indebtedness. 'All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature or the people of the state in framing their Constitution.' "

 Immunity in some cases is not illegal discrimination, for in Frost v. Corporation Commission, 278 U. S. page 527, 49 S. Ct. 235, 238, 73 L. Ed. 483, in speaking of the equal protection clause of the Fourteenth Amendment, it is by Justice Sutherland laid down: "Immunity to one from a burden imposed upon another is a form of classification and necessarily results in inequality; but not necessarily that inequality forbidden by the Constitution. The inequality thus prohibited is only such as is actually and palpably unreasonable and arbitrary."

 There is a presumption in favor of the state authority, and the burden of showing that there is an inequality forbidden by the Constitution of the United States is clear and certain, as expressed by Justice Sutherland in the case of Arkansas Gas Company v. Railroad Commission, 261 U. S. page 384, 43 S. Ct. 387, 389, 67 L. Ed. 705, wherein it is laid down: "The state Legislature is vested with a wide discretion in the matter and interference by this court may not be had merely because its exercise has produced inequality—every selection of subjects or persons for governmental regulation does that—but only where it has produced an inequality which is actually and palpably unreasonable and arbitrary."

Such are some of the general principles that govern the consideration of this case, to be more precisely stated later, by reference to decisions of the Supreme Court of the United States, where certain state statutes have been adjudged invalid as within the inhibition of the Fourteenth Amendment. The decision of this case might, with perfect security, rest alone upon decisions of the Supreme Court of the United States to be cited later, but it may be established on a broader and even firmer basis than mere technical authority and upon considerations not only recognized by the lawyer but by the layman as well. In this age, when nothing is taken for granted, where mere dictum is challenged in the court as well as in the street, when reason is master of to-day and the enemy of yesterday, when the judiciary must stand

upon unalterable truth and substantial justice for proper sanction of its decrees, and must render an accounting to the people to justify that respect, to be ultimately won, if the determination is to permanently stand in the exacting criticism of an enlightened public opinion, it is well to break over time's old barrier growth of right and fit, and reason apart from accepted authority as laid down in cited cases. It is now recognized everywhere that, while the Fourteenth Amendment had its occasion in the freedom of the negro, it was intended to safeguard all persons of every class, creed, and condition. Every great constitutional guaranty had its origin in revulsion to some long, lasting, and grave abuse. The Fourteenth Amendment is now imbedded in the foundation of a common and universal justice, and its origin was in the same spirit, and for the same purpose, that established the doctrine of "due process of law" embodied in the Fifth Amendment to the Constitution.

Under the Fourteenth Amendment, the property of the humble and the mighty is equally and alike protected from confiscation or unjust tax discrimination by a state. Under this amendment a corporation, a lawful entity composed of citizens, dealing with their lawful property in a lawful way, is entitled to adequate protection in the pursuit of the purpose for which it is organized by the state. Subject to proper control, there is nothing inimical to the general welfare in corporations; they may be made, as they are in legal theory, the servants of the state; under proper restrictions and just regulations, private corporations are essential to the large undertakings and demands of modern life. They are the planets in the business solar system necessary to the regular operation and success of the whole modern firmament—social, commercial, and political. Modern demands require commercial giants to supply daily wants and to promote the future.

With these principles in mind it is not necessary to suggest further justification for striking down a state statute that injuriously effects such desired objects and that violates the fundamental law of the land.

The statute in question exempts individual citizens from taxation on shares of stock held by them in foreign corporations. This is the privilege and legal right of a state, but the same statute imposes a tax upon like shares if held by a corporation of this state. The statute says to an individual in the lum-

ber business: "You may hold shares of foreign corporations in the capital of your business without limit and without tax"; it says to the corporation: "The tax must be paid on foreign shares." In this case the 225 shares of the capital stock of the Argent Lumber Company, a South Carolina corporation, is assessed by the state of North Carolina for taxation at the sum of $225,000. Obviously the state of North Carolina has imposed a discriminating burden on the corporation without any logical recognized or necessary reason for the distinction, except solely that the state of North Carolina has illegally and in violation of the Fourteenth Amendment to the Constitution of the United States made complainant bear unjustly a part of the taxation that should be fairly and equally divided alike between a corporation and an individual. Moreover, this statute is even more vicious in effect. It encourages the individual to evade the state tax power, by investments in foreign securities, and without any just or necessary reason for the distinction compels complainant to pay tax on identical holdings. Such legislative action cannot have any other purpose or justification than evident intent to discriminate against the corporation.

The tax on the foreign shares of complainant by the state of North Carolina is not a "Corporation Tax," which in the reasonable exercise of the power to tax has been upheld in other states; it is not a "Business or Franchise Tax," as was upheld in the case of the Home Insurance Company v. New York, 134 U. S. page 594, 10 S. Ct. 593, 33 L. Ed. 1025; it is not a mere question of state "Double Taxation" or a proceeding to collect back taxes, as presented in Fort Smith Lumber Company v. Arkansas, 251 U. S. page 532, 40 S. Ct. 304, 64 L. Ed. 396, and in White River Lumber Company v. Arkansas, 279 U. S. page 692; but it is a "Property Tax" in which there is a substantial and arbitrary discrimination as between an individual and a corporation of the same nature and character as has been held invalid in the Railroad Tax Case (C. C.) opinion by Justice Field, 13 F. page 722; in County of Santa Clara v. Southern Pacific Railroad Company (C. C.) 18 F. page 385; in Northern Pacific Railroad Company v. Walker et al. (C. C.) 47 F. page 681; in Connolly v. Union Sewer Pipe Company, 184 U. S. page 560, 22 S. Ct. 431, 46 L. Ed. 679; in Louisville Gas Company v. Coleman, 277 U. S. page 37, 48 S. Ct. 423, 72 L. Ed. 770, and recently in the case of Quaker City Cab

Company v. Pennsylvania, 277 U. S. page 389, 48 S. Ct. 553, 72 L. Ed. 927. In this last case (Quaker City Cab Company) Justice Owen J. Roberts of counsel for the plaintiff, in his brief filed in the case, says: "In such cases as this valid classification cannot rest solely upon the character of the operator (that is whether it be corporate or noncorporate), when there is no other difference in the situation or the circumstances of the operators. The tax is not of a kind peculiar to corporations. It is unlike a capital stock tax, which of necessity can apply only to artificial taxpayers or an excise tax." In this case is not this reasoning of Justice Roberts particularly appropriate? Is there no difference in the method or effect of taxing a corporation or an individual on shares of stock in a foreign corporation? In both instances it is a tax on property, and of a like discrimination, as if the state of North Carolina has provided for a tax on the realty holdings of a corporation, or on its tangible personal property, and exempted the like holdings of an unincorporated association or an individual.

It is a matter of special notice that in the Quaker City Cab Company Case, just referred to, the dissenting opinions of Justices Brandeis, Holmes, and Stone are, in the main, based on the legal assumption that a discrimination is proper as between a corporation and an individual, in connection with the different attributes of each, and the difference of the extent of business, but those learned justices do not contend that such a discrimination is legally permissible, under the law, between an individual and a corporation, in the assessment and taxation of personal property held in the manner and of the character as is present in this case. The case of Flint v. Stone Tracy Co., 220 U. S. page 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, which is referred to by Justices Brandeis and Stone in their dissenting opinion in the Quaker City Cab Company Case, involved the validity of a "corporation" tax imposed by federal law, and thus not involved in the application of the Fourteenth Amendment to the Constitution.

In the Quaker City Cab Company Case, 277 U. S. page 402, 48 S. Ct. 553, 555, 72 L. Ed. 927, Justice Butler says: "The character of the owner is the sole fact on which the distinction and discrimination are made to depend. The tax is imposed merely because the owner is a corporation. The discrimination is not justified by any difference

in the source of the receipts or in the situation or character of the property employed."

In the dissenting opinions Justice Brandeis contends for a different rule in taxing corporations from that applied to individuals. Justice Holmes contends that there is a difference of degree between the business done by corporations and individuals, and that a state has a latitude to discourage activity in corporation form, if it desires, by a special tax under the Fourteenth Amendment; Justice Stone contends for the rule stated in the Flint Case, 220 U. S. page 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312—the different rule of taxation as to corporations from that applied to individuals. It is not improper to say that none of the views of these dissenting justices have yet received the sanction of the majority opinion of the Supreme Court of the United States. All the expressions of that court on the subject have been to the contrary.

In Northern Pacific R. R. Co. v. Walker et al. (C. C.) 47 F. page 686, Justice Caldwell says: "Property of the same kind, in the same condition, and used for the same purpose, must be taxed by a uniform rule without regard to its ownership."

In Gulf, Colorado & Sante Fé R. R. Co. v. Ellis, 165 U. S. page 154, 17 S. Ct. 255, 256, 41 L. Ed. 666, Justice Brewer says: "It is well settled that corporations are persons within the provisions of the fourteenth amendment of the constitution of the United States. * * * The rights and securities guarantied to persons by that instrument cannot be disregarded in respect to these artificial entities called 'corporations' any more than they can be in respect to the individuals who are the equitable owners of the property belonging to such corporations. A state has no more power to deny to corporations the equal protection of the law than it has to individual citizens."

Upon the authority quoted, and for the reasons given, I am of the opinion that the statute of the state of North Carolina assessing and taxing the shares held by complainant in the Argent Lumber Company, a South Carolina corporation, is unconstitutional under the equal protection of the Fourteenth Amendment to the Constitution of the United States, and I shall sign a decree accordingly, due regard being had to the tender of $288.87 by complainant as set forth in section (e) hereof under statement of facts, beginning with (a) on page 1 and finishing with (f) on page 2, both inclusive.