The Honorable Stan Clark State Senator, 40th District200 U.S. 83
Oakley, Kansas 67748
Dear Senator Clark:
As Senator for the 40th district, you inquire whether the holding in the Kansas Supreme Court case Energy Reserves Group, Inc. v. Kansas Powerand Light Co., 230 Kan. 176 (1981), may be construed as authority for legislative intervention into utility contracts between Sunflower Electric Power Corporation and several rural electric associations. You also query whether the Kansas Corporation Commission has the authority to adjust the rates charged under these contracts.
You indicate that your constituents are concerned about the excessively high rates being charged by Sunflower to the seven rural electric cooperatives that entered into contracts to buy all of their electric power from Sunflower.
The case in question, Energy Reserves Group, Inc. v. Kansas Power andLight Co., 230 Kan. 176 (1981), aff'd 459 U.S. 400, 103 S.Ct. 697,74 L.Ed.2d 569 (1983) (Energy Reserves), is a declaratory judgment action involving the construction of the terms of several natural gas purchase contracts in light of both federal and state legislation. In pertinent part, the court concludes the state legislation (the Kansas Natural Gas Price Protection Act, K.S.A. 55-1402 et seq.) is a reasonable exercise of the state's police power because it addressed an important public purpose of regulating the intrastate price of natural gas in light of federal legislation which "substituted deregulation for close agency regulation under which the industry had operated for many years." 230 Kan at 189. The case involves federal legislation which reserved to the states the authority to control prices for intrastate gas purchases. In accordance with this authority, the Kansas legislature, in an effort to minimize the impact of gas price increases due to the federal deregulation, chose to allow only gradual gas price increases by postponing the automatic price escalator clauses in intrastate gas purchase contracts for several years. K.S.A. 55-1404.
The contracts in question are all-requirements, wholesale electric power contracts, but they do not involve facts which the court used to determine the constitutional issue in Energy Reserves. In short, it is our opinion that the Supreme Court case cannot be used as conclusive authority for legislative intervention into the utility contracts in question because they do not involve the same circumstances. However,Energy Reserves is important because it provides the criteria which must be met if legislation which affects private contracts is to withstand a challenge based on the constitutional prohibition against state impairment of contract obligations, U.S. Const., Art. 1, Sec. 10. The test for determining whether a state law violates the contract clause of the United States Constitution is whether: (1) The State law has substantially impaired a contractual relationship; (2) there is a significant and legitimate public purpose behind the legislation; and (3) the adjustment of the contracting parties' rights and responsibilities is based upon reasonable conditions and is appropriate to the public purpose justifying the legislation's adoption. Energy Reserves citing AlliedStructural Steel Co. v. Spannaus, 438 U.S. 234, 98 S.Ct. 2716,57 L.Ed.2d 727 (1978); Home Bldg. L. Ass'n v. Blaisdell, 290 U.S. 398,54 S.Ct. 231, 78 L.Ed. 413 (1934). See: Federal Land Bank of Wichitav. Bott, 240 Kan. 624 (1987) (for a historical review of the test). Given that your question does not involve the constitutionality of specific state legislation, we are unable to apply the criteria. In short, whether there is a constitutionally challengeable consequence created by legislative intervention is a factual question, dependent on the facts in each particular case. 64 Am.Jur.2d Public Utilities § 191 (1972).
Your second question is whether the Kansas Corporation Commission (KCC) has, under its general powers to regulate, the authority to downwardly adjust the rates charged by Sunflower. The KCC has broad power pursuant to K.S.A. 1996 Supp. 66-101b to require that a public utility charge the ratepayer a reasonable rate for the regulated services provided by the utility. More specifically, every electric public utility must file not only schedules of rates but also all contracts. K.S.A. 1996 Supp. 66-101c. The KCC investigates, upon complaint or upon its own initiative, all schedules of rates of electric public utilities. After investigation and hearing, the commission finds whether the rates are unjust, unreasonable, unjustly discriminatory or unduly preferential and may establish and order substitute rates as are reasonable and just. K.S.A. 1996 Supp. 66-101d. Accordingly these statutes provide the basis for authority to conduct rate proceedings which can downwardly adjust the rates. However, absent the requisite public interest discussed in our response to your first question, the abrogation of a contract may not be effected merely to relieve one or the other of the parties from imprudent or unprofitable undertakings. Central Kansas Power Co. v. StateCorporation Commission, 181 Kan. 817 (1957); Wichita R. Light Co. v.Public Utilities Comm'n of the State of Kansas, 260 U.S. 48,43 S.Ct. 51, 67 L.Ed. 124 (1922); Arkansas Natural Gas Co. v. RailroadCommission, et al., 261 U.S. 379, 43 S.Ct. 387, 67 L.Ed. 705 (1922).
You also question whether the federal government's involvement in the financing of the contracts in question affects the legislative intervention contemplated in the first question. The contracts in question are not simple all-requirements contracts but rather wholesale power contracts wherein the seller constructed an electric generating plant in return for payment on the power furnished, payment on account of principal and interest on all indebtedness of the seller, and payment on reasonable reserves. It is clear that the parties' indebtedness would be a consideration when rates are at issue. See Tri-State Generation Transmission Association, Inc. v. Shoshone River Power, Inc.,874 F.2d 1346, 1359 (10th Cir. 1989). How the indebtedness would affect the legislative intervention cannot be addressed without consideration of the legislation. See first question above.
In conclusion it is our opinion that the holding in Energy ReserveGroup, Inc. v. Kansas Power Light Co., 230 Kan. 176 (1981) cannot be construed as conclusive authority for the constitutionality of legislative intervention into private electric utility contracts, but the case is important because it provides the criteria which any legislative intervention must meet in order to overcome an unconstitutional impairment of contract challenge. Additionally, the KCC has the authority to abrogate utility contracts but only after an express finding that the contracts at issue are unreasonable, unjustly discriminatory, unduly preferential and adversely impacting the public welfare.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Guen Villarreal Easley Assistant Attorney General
CJS:JLM:GVE:jm