In re M. E. SMITH & CO., Inc.

In re JOHN M. GILCHRIST CO.

No. 3067.

District Court, D. Nebraska, Omaha Division.
Aug. 21, 1931.

The report of Herman Aye, Special Master, is as follows:

This matter having been referred to me as special master, to hear the parties, take testimony, and report my findings of fact and conclusions of law, I report as follows:

The application of the John M. Gilchrist Company, certified public accountants of Omaha, sets forth in substance: That during the year 1927 and part of the year 1930, inclusive, the claimant, under authority of an order of the referee, made a detailed and comprehensive audit of the bankrupt estate for the purpose of revealing the true financial condition of the bankrupt; that, upon the sale of the assets, the claimant was authorized by the referee in bankruptcy to handle the accounts of the trustee, checking the receipts and disbursements monthly, reconciling the banks, computing the interest allowances, posting the cash records, making a typed monthly report thereof for the formal records of the trustee, and furnishing information to the trustee from the voluminous records of the bankrupt; that during the entire time of the trusteeship claimant made regular monthly examinations and reports for and on behalf of the trustee; and that there is a balance due of $1,029.75, for the accounting services so rendered to the trustee.

The application further sets forth that in the summer of 1930 Mr. John M. Gilchrist, who appears from the testimony taken to have been one of the partners who customarily acted for the claimant in the collection of its accounts, was abroad, and upon his return in September, 1930, found that a final dividend had been declared and the trustee-ship terminated without claimant's claim having been paid.

Attached to the sworn application is a written statement of John U. Loomis, the former trustee in bankruptcy of M. E. Smith & Co., in which he sets forth that the claimant performed services for him as such trustee, consisting of making monthly bank reconcilements, posting cash book and checking of records during the period from January 1, 1927, to February, 1930; that such services were performed with the knowledge and consent of the referee in bankruptcy, and were, in the opinion of the former trustee, of the reasonable value of $1,029.75; that, as such trustee, he would have recommended the payment of the claim for that amount had such a claim been made during the administration of the bankrupt estate. The former trustee further sets forth that there is now on hand in the registry of the clerk of this court, on account of unclaimed dividends in this bankruptcy matter, the sum of $1,158.68, and the former trustee suggests to the court that claimant be paid said sum of $1,029.75 by the clerk of this court, and that said amount be charged against the amount in the hands of the clerk which was paid to the clerk as unclaimed dividends.

The undersigned took the testimony of Mr. Elton C. Loucks, one of the partners of the claimant firm, and it appears from his testimony that by and with the authority and consent of the referee in bankruptcy, and at the request of the trustee in bankruptcy, the claimant firm performed accounting services for such trustee in bankruptcy, and that there is a balance due for such services rendered the trustee of the reasonable value of $1,029.-75. It further appeared from his testimony that Mr. John M. Gilchrist, one of the members of the firm, customarily presented the bills of the firm for payment of firm accounts, that said Gilchrist made a trip to Europe while the bankrupt estate was in the course of administration, and at a time when it did not seem probable that the estate would be closed before his return, but that it transpired that the final dividend to creditors was paid and the estate closed by the referee before the claim of claimant was presented to the trustee and referee for payment.

I find, therefore, as a finding of fact, that the claimant did perform accounting services for the former trustee herein, with the consent and approval of the referee during the years 1927, to and including a part of the year 1930, and that the reasonable value of the unpaid balance due said claimant is the

sum of $1,029.75; that said claim was, and is, a valid claim against said bankrupt estate as an administration expense, and should have been paid before the declaration of any dividend, or at least before the declaration of a final dividend to the creditors, and that the claimant has not been guilty of laches or negligent delay in presenting its claim for payment, but the failure to present said claim to the trustee, and to have the same paid during the course of administration, was, and is excusable. The trustee should have seen to it that all expenses legitimately incurred by him in the administration of the estate were paid before the final dividend to creditors and the closing of the estate by the referee.

### Conclusions of Law.

Section 2 of the Bankruptcy Act (11 USCA § 11) provides among other things that: "The courts of bankruptcy as defined * * * are hereby invested * * * with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings, in vacation in chambers and during their respective terms, as they were on July 1, 1898, or may be thereafter held. * * * (15) make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this title."

In Collier on Bankruptcy (13th Ed.) vol. 1, p. 39, the author says: *"Equitable Jurisdiction.* A bankruptcy court is a court of equity, seeking to administer the law according to its spirit and not merely by its letter. Proceedings in bankruptcy generally are in the nature of proceedings in equity, and frequently call for the exercise of full equity powers in the ascertainment and proper enforcement of the equities of the parties; where this is so, the Court may apply equitable rules and will be governed by equitable principles."

Collier further says, volume 1, p. 43, par. (e): "There are two distinct classes of jurisdiction conferred upon Courts of Bankruptcy by this section: First, jurisdiction over the proceedings in bankruptcy, initiated by the petition and ending in the distribution of assets among the creditors and the discharge of or refusal to discharge, the bankrupt, etc."

The above author further states, volume 1, p. 54, par. (j): *"Practice in Bankruptcy Courts.*—Courts of Bankruptcy are always open for the transaction of business. It is expressly provided in this section that the jurisdiction conferred upon courts of bankruptcy may be exercised, 'in vacation in chambers and during their respective terms' * * *. The general rule that the power of a court to modify its orders expires with the term at which they are granted, does not apply to a bankruptcy court, as a proceeding in bankruptcy, from the time of its commencement until the final settlement of the estate, is but one suit."

Section 64b of the Bankruptcy Act (11 USCA § 104(b) provides inter alia: "The debts to have priority, except as herein provided, and to be paid in full out of bankrupt estates, and the order of payment shall be: * * * (3) the cost of administration. * * * "

Section 62 of the Bankruptcy Act (11 USCA § 102) provides: "The actual and necessary expenses incurred by officers in the administration of estates shall, except where other provisions are made for their payment, be reported in detail, under oath, and examined and approved or disapproved by the court. If approved, they shall be paid or allowed out of the estates in which they were incurred."

In Remington on Bankruptcy, vol. 2, § 613, the author says: *"Judge May Dispense With Referee and Retain Charge Himself.* Immediately upon adjudication, the case is referred to the proper referee to take charge of the administration of the estate. The judge, however, may, if he so desire, retain direct charge of the case after adjudication, as he must do before adjudication, and may dispense with the referee."

The Bankruptcy Act itself, section 22a (11 USCA § 45(a), provides: "After a person has been adjudged a bankrupt the judge may cause the trustee to proceed with the administration of the estate, or refer it (1) generally to the referee or specially with only limited authority to act in the premises or to consider and report upon specified issues. * * * "

With reference to the payment of dividends, the Bankruptcy Act, § 66 (11 USCA § 106), provides among other things: *"Unclaimed Dividends.* (a) Dividends which remain unclaimed for six months after the final dividend has been declared shall be paid by the trustee into court. (b) Dividends remaining unclaimed for one year shall, under the direction of the court, be distributed to the creditors whose claims have been allowed but not paid in full, and after such claims have been paid in full the balance shall be paid to the bankrupt."

In the note to section 2351, Remington on Bankruptcy, dealing with the subject of summary jurisdiction of courts of bankruptcy, the author quotes as follows from the following cases:

In re Antigo Screen Door Co., 123 F. 249, 251 (C. C. A. Wis.): "We take it that any court, whether one of equity, common law, admiralty, or bankruptcy, having in its treasury a fund touching which there is dispute, may, by virtue of its inherent powers, determine the right to the fund thus in its possession. Jurisdiction in that respect is an incident of every court. * * * A fund so possessed is in custodia legis and right to it only may be asserted and determined in the court which possesses it."

In re McCallum, 113 F. 393, 394 (D. C. Pa.): "It seems to me that the present application is the ordinary case of a claim against a fund in the hands of a court, and such claims the court in possession of the fund has the right to hear and determine. It is an incident to the power to distribute, and, except where this power is expressly so limited by competent authority that a claim to a share of the fund must be sent to some other court for determination, the court that has possession of the fund is the proper tribunal to decide all controversies concerning its ownership."

In re Moody (D. C.) 131 F. 525, 529: "It is a familiar principle of equity jurisprudence that property in the custody of a court of equity is always held by it in trust for those to whom it rightfully belongs; and the jurisdiction to inquire into and determine to whom it so belongs, and to that end to require all claimants thereto to present their claims within a stated time, or be barred of any interest in or right to the property, is inherent in every court of equity."

In re McBride & Co. (D. C.) 132 F. 285, 286: "The jurisdiction conferred on courts of bankruptcy by section 2, subdivision 7 of the act over bankrupt estates, 'to determine all controversies in relation thereto,' is applicable to proceedings of this nature, where the property is actually in the possession of the court or its officer, and is subject to distribution under its directions."

In re Orona Mfg. Co. (D. C.) 269 F. 855, 856: The court, in dealing with the question of power of the court over unclaimed dividends, said among other things: "The dividends in question are not being dealt with in a final way. The referee has merely ordered that they be paid into court, where they can still be claimed by the creditors entitled to them, and, if not claimed, will, according to the usual practice, be eventually divided among other creditors of the estate, unless too small in amount to justify the expense and trouble of so doing. This method of disposing of such funds seems to me reasonable, and to be unobjectionable on constitutional grounds. It serves a very useful purpose in enabling trustees to close out estates completely and finally, and concentrates unclaimed funds in the hands of the court, instead of scattering them among many trustees. The power to direct the disposition of small residues in bankruptcy cases is incident to the general power over bankruptcy conferred upon Congress by the Constitution."

### Discussion.

It is clear that under section 22a of the Bankruptcy Act the court in this case could have administered the estate through a trustee without reference to a referee. It is true that a trustee would have had to be elected for certain purposes; among other things to pass title to real estate, and to collect and distribute the assets of the estate. After the collection of all the assets and distribution of dividends to the creditors and the closing of the estate by the referee, and the approval of his acts by the court, the referee's jurisdiction ends, but the jurisdiction of the court does not. Certain duties are, by the very terms of the act, imposed upon the court after the estate is closed, namely, under section 66b (11 USCA § 106(b), "Dividends remaining unclaimed for one year shall, under the direction of the court, be distributed to the creditors," etc. While the exact procedure for the distribution of the unclaimed dividends by the court is not pointed out, I see no reason why the court could not, and probably should not, direct the clerk to make a dividend sheet, give notice to creditors, and send out the dividends as provided in the last-named section. In that event the court would undoubtedly have power to make orders for the payment of the expenses of the distribution of the dividend. Other instances appear in the books of jurisdiction being exercised by the judge after the closing of the estate by the referee. In re Frank (D. C.) 278 F. 390, it appears that, after the bankruptcy estate had been entirely closed by the referee, the bankrupt petitioned to amend his schedules to change the name of a creditor payee of a promissory note. The court held that it had power to reopen the estate for that purpose, but that it was not necessary to exercise that power; that the court itself had

such power and authority and exercised it and allowed the amendment to be made. And, in Re Graff (D. C.) 242 F. 577, 582, the court held that it was within the jurisdiction of the bankruptcy court to grant an application for leave to turn property over to the estate and sell it in order to remove any question as to title from the failure of such property to pass through the hands of the bankruptcy court while being administered through the referee. The court said: "The application of Nevins for leave to turn the property over to the estate, and to sell the same, is within the jurisdiction of this court to carry out, in order to make title to those assets as to which property was vested in the bankrupt estate, and as to which any question as to title may exist from the fact that they have not passed through the hands of the bankruptcy court."

The court further held that, after the sale, the proceeds should not be paid to the bankrupt estate, but should be paid to one Nevins, who claimed that they were turned back to him in the bankruptcy proceeding while being administered by the referee.

As will be seen from the cases cited, "any court whether one of equity, common law, admiralty or bankruptcy, having in its treasury a fund touching which there is dispute, may, by virtue of its inherent powers, determine the right to the fund in its possession," and, as stated in some of the cases, "it is a familiar principle of equity jurisprudence that property in the custody of the court of equity is always held in trust for those to whom it rightfully belongs, and the jurisdiction to inquire into and determine to whom it belongs, * * * is inherent in every court of equity."

It will be noted, too, that the judge could, in the first instance, have administered the entire estate without referring the case to a referee. It seems clear to me that the judge or court, as distinguished from the referee, must and does have power to further administer the estate in so far as it may be necessary, after it has been closed by the referee, where one has been appointed.

The claim of the claimant herein is one which should have been paid before the payment of any dividends. The fund now in the hands of the clerk does not belong unqualifiedly to creditors. They are entitled to their dividends only after all proper expenses of administration have been paid, and no wrong is done them by now paying what is clearly a legitimate item of expense of administration, not previously paid.

I find, therefore, as a conclusion of law:

First, that the claim of the claimant is a valid and legitimate claim, to wit, an item of expense of administration, which should have been paid prior to the declaration of any dividends.

Second, that said claim should now be paid out of the unclaimed dividends in the hands of the clerk; that the court has power and jurisdiction to so order claimant's claim to be paid out of the said fund, and should do so.

I am returning herewith the application of John M. Gilchrist Company for allowance and payment of claim as an expense of administration with recommendation of the former trustee attached, and also the order of reference.

Alfred C. Munger and Crossman, Munger & Barton, all of Omaha, Neb., for applicant.

WOODROUGH, District Judge.

This matter, on the 13th day of August, 1931, having been referred to Herman Aye, as special master, to report his findings of fact and conclusions of law, and having read and considered said report, said report and findings of fact and conclusions of law are hereby ratified, approved, and confirmed.

The court therefore finds:

(1) That there is now in the hands of the clerk of this court the sum of $1,158.68, paid into the office of the clerk by the former trustee herein as unclaimed dividends.

(2) That the John M. Gilchrist Company is entitled to have allowed for services performed for the trustee and for the benefit of this estate as an expense of administration a claim for $1,029.75, which should be paid out of the funds above found to be in the hands of the clerk of this court.

(3) That through inadvertence said claim was not allowed and paid while this estate was being administered by the referee, but that said claim is and was entitled to priority of payment over the claims of or dividends to general creditors.

(4) That the amount involved as compared to the amount of claims allowed against said estate, and the expense, time, and trouble involved in the reopening of this estate, is such as to justify this court in exercising its discretion in refusing to reopen said estate for the purpose of allowing the payment of said claim.

It is therefore ordered, adjudged, and decreed that this estate should not be reopened;

that the claim of John M. Gilchrist Company for $1,029.75, for services performed for the trustee herein, and for the benefit of this estate, should be and hereby is allowed in the sum of $1,029.75, as an expense of administration; that the clerk is hereby ordered and directed to deduct from said amount of $1,158.68, first, the cost of this proceeding taxed as $———, second, a commission of 1 per cent., amounting to $11.58, and, third, to pay to the claimant herein, the John M. Gilchrist Company, the sum of $1,029.75, upon taking receipt in full from said claimant for said claim, and to pay to Herman Aye, as compensation for his services as special master herein, the sum of $———.