**In the Matter of Lawrence AMPEL, a/k/a Larry Ampel, Bankrupt.**

United States District Court
S. D. New York.
April 16, 1962.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, New York City, for the United States. Robert E. Kushner, Asst. U. S. Atty., New York City, of counsel.

Erdheim & Armstrong, New York City, for bankrupt.

SUGARMAN, District Judge.

On February 15, 1956 the Small Business Administration of the United States loaned Lawrence Ampel, also known as Larry Ampel, the bankrupt herein, $28,-000, for which it took his promissory note secured by a second mortgage on "Larrabee Cottages" at Pleasant Valley, New York. The mortgage was subordinate to a then existing first mortgage of $30,000. The loan was for the purpose of repairing flood and hurricane damage to the cottages during a storm in August of 1955.

In April of 1957 the bankrupt and one Ben Gale incorporated Ampel Plumbing and Heating Co., Inc., a New York corporation, authorized to issue 100 shares of stock, of which 51 shares were issued to Gale and 49 shares to the bankrupt.

At about the same time (April 11, 1957) the bankrupt's wife acquired title to their home at 1 Whitman Road, Yonkers, New York, for a purchase price of $20,000, of which $12,745.83 was represented by a purchase money mortgage.

On August 13, 1958 the United States declared the entire unpaid amount of the bankrupt's note and second mortgage aforesaid due and payable because of default in the payment of principal and interest thereon.

In October of 1958 the holders of the first mortgage on Larrabee Cottages, to which the government's mortgage was, as aforesaid, subordinate, commenced a foreclosure of the first mortgage, alleging a default of approximately $29,000 with interest thereon. In May of 1959 Larrabee Cottages were sold in foreclosure of the first mortgage and a deficiency remained.

On July 2, 1959 the United States obtained a judgment in this court in the sum of $28,557.33 against the bankrupt on its note secured by its second mortgage on Larrabee Cottages.

On December 1, 1959 the government examined the bankrupt in supplementary proceedings on its judgment[1] and on

1. So far as pertinent, the bankrupt, as judgment debtor, was asked, among others, the following questions and gave the following answers:

"Q. By whom are you employed?
"A. Ampel Plumbing [Ampel Plumbing and Heating Co., Inc.].
"Q. Do you have any interests in Ampel Plumbing other than that of an employee?
"A. No. I am employed there.
"Q. Do you own any stock in that corporation?
"A. No.
"Q. Do you receive a salary from that corporation?
"A. I do.
"Q. What is your salary?
"A. $115 a week, gross.
"Q. Does your wife receive a salary as an officer?
"A. No.
"Q. Does your wife own an automobile?
"A. No. My wife has an old car; yes.
"Q. What make?
"A. It is a 1953 Mercury. It's really my son's car, but she put it on her name because he's too young.
"Q. Does she own it outright?
"A. Yes.
"Q. At the present time do you own any real estate?
"A. No.
"Q. Does your wife own any real estate at the present time?
"A. My wife has 1 Whitman Road.
"Q. When did she purchase that?
"A. In April 11, 1957.
"Q. How much did she pay for the property?
"A. About twenty thousand.
"Q. Are there any mortgages outstanding against the property?
"A. A few.
"Q. With whom?
"A. Emigrant Savings Bank.
"Q. And what is the amount of that mortgage?

"A. That's about $12,000—something.
"Q. Approximately?
"A. Close to twelve.
"Q. Was that the face amount of the mortgage?
"A. Yes.
"Q. And how much remains unpaid?
"A. That amount.
"Q. And what was the original amount?
"A. (By Mr. Erdheim [Lawrence Ampel's attorney]) $12,745.83.
"Q. Is there any other mortgage on that property?
"A. There are some home improvement loans on that.
"Q. What are they?
"A. One is about $1500, and one is about $700.
"Q. What was the purpose of these loans?
"A. Improvements—repairs.
"Q. Does your wife own any stock in Ampel Plumbing Corp.?
"A. Yes.
"Q. Is she the sole stockholder?
"A. No.
"Q. How many shares are outstanding in Ampel?
"A. One hundred shares.
"Q. And of this one hundred, how many does she own?
"A. Forty-nine.
"Q. When did your wife purchase these shares of stock?
"A. I think about a year or so.
"Q. From whom did your wife buy the stock?
"A. From—I had it previously.
"Q. And then you transferred it directly to your wife?
"A. Yes.
"Q. And when did you purchase the stock?
"A. When we formed the corporation in 1957.
"Q. When did you transfer it to your wife?
"A. In the year of 1958.

December 16, 1959 the bankrupt executed the transcript of his said examination in supplementary proceedings.

Apparently nothing was done further until July 18, 1961 when it appears that the government again examined the bankrupt in supplementary proceedings. No transcript of that examination has been supplied herein.

On September 1, 1961 Lawrence Ampel filed a petition in bankruptcy, listing as his only creditor the United States of America for the debt of the judgment of $28,557.33 and listed as his only assets two life insurance policies.

On September 15, 1961 the referee in bankruptcy, to whom the matter had been referred, made an order setting the first meeting of creditors for September 28, 1961, directing that the bankrupt appear at that meeting for the purpose of being examined and fixed December 1, 1961 as the last day for filing objections to the bankrupt's discharge.

On September 18, 1961 the referee served by mail the aforesaid notice of the first meeting of creditors and of the order fixing the time for filing objections to the discharge upon all interested parties, including "U. S. Attorney, U. S. Courthouse, Foley Square, New York, N. Y.".

On September 28, 1961 the first and only meeting of the creditors was held at which no creditor appeared. The bankrupt was then and there interrogated by the referee briefly as to the schedules filed by the bankrupt. The government, having no one at the meeting, of course, did not interrogate the bankrupt. The referee on the same day, because "the schedule of the bankrupt discloses no assets, and [because] no creditor has appeared at the first meeting, and [because] the appointment of a trustee of

the bankrupt's estate is not now desirable", ordered that no trustee be appointed and that no other meeting of creditors be called.

On December 4, 1961, it "appearing that, after due notice by mail, no objection to the discharge of said bankrupt was filed within the time fixed by the court", the referee ordered the bankrupt, Lawrence Ampel, discharged from all debts and claims other than those excepted from the operation of a discharge in bankruptcy, and on December 4, 1961 ordered that the "bankrupt estate be and the same is hereby closed".

The government on March 2, 1962 procured an order that the bankrupt show cause "why this Estate and proceeding in bankruptcy should not be reopened". The government in its memorandum in support of this application characterizes it as "a petition for an order to reopen the bankruptcy proceeding and to refer it to a referee in bankruptcy in order that a trustee to be appointed may examine and take action toward the recovery of assets *transferred by the bankrupt in fraud of his creditor*" (emphasis supplied).

The government's petition predicates this application upon the assertion that (as characterized in its supporting memorandum) "the transactions challenged herein are the transfer by the bankrupt to his wife in 1958 of 49% of the stock of Ampel Plumbing and Heating Co., Inc.; the purchase in 1957 of a house in Yonkers, New York, title to which is held by the bankrupt's wife; and the purchase on unknown dates of a 1957 Ford and a 1957 Cadillac, title to both of which automobiles is held by the bankrupt's wife".

■ Because the order to show cause and the petition upon which it is predi-

---

"Q. What did you receive as consideration for the transfer of this stock?
"A. Monetary?
"Q. What did you receive as consideration?
"A. No money at all—there was no money given out.

"Q. Did you transfer this stock to your wife?
"A. Yes.
"Q. Have you ever filed a petition of bankruptcy?
"A. No.
"MR. ERDHEIM: But one is contemplated."

cated completely ignore General Rule 9 (d) of this court, by their failure to cite the statute upon which the motion is predicated, the court will assume that the relief is sought under Section 2, sub. a(8) of the Bankruptcy Act, Title 11 U.S.C.A. § 11, sub. a(8), which vests in courts of bankruptcy jurisdiction to "re-open estates for cause shown". The application, therefore, is addressed to the sound discretion of the court. Unless the circumstances shown constitute good cause for granting the relief sought it may be refused. 1 Collier on Bankruptcy (14th ed.) 247, ¶ 2.49.

In my view, the government has utterly failed to show good cause to reopen this proceeding, because it has not shown as claimed that "assets [were] transferred by the bankrupt in fraud of his creditor".

■ Treating seriatim the three bases for the relief sought, we find the first to be the allegation that in 1958 the bankrupt transferred 49% of the stock of the Ampel Plumbing and Heating Co., Inc. to his wife for no consideration. I fail to see where any fraud was practiced in this connection because, as appears from the above quoted portion of the transcript of the examination of the bankrupt in supplementary proceedings conducted by the government almost two years before the voluntary petition in bankruptcy was filed, the bankrupt frankly disclosed that about a year after he acquired the stock in 1957 when the corporation was formed, he transferred it directly to his wife in 1958, for which he received no consideration.

■ The second basis for the relief sought herein by the government is that the bankrupt fraudulently concealed the purchase of the house in Yonkers in 1957 in his wife's name with funds which may have been supplied by the bankrupt. Here again the examination in supplementary proceedings clearly disclosed what had been done and, although the frame of the questions elicited answers that the wife purchased the property, the bankrupt was asked no questions as to the source of the moneys above the mortgage which even now is left entirely to conjecture or for that matter that the difference between the mortgage and the purchase price was in fact paid in cash.

■ The third basis for the relief herein sought is that the bankrupt's wife has title to a 1957 Ford and a 1957 Cadillac. The petition herein treats with this phase as follows:

"On information and belief, there are registered with the New York City [sic] Department of Motor Vehicles two motor vehicles in the name of the bankrupt's wife, a 1957 Ford and a 1957 Cadillac."

Nothing is contained in the moving papers to indicate when the wife obtained title to these cars. So far as the record discloses, it may have been after the examination in supplementary proceedings of the bankrupt on December 1, 1959, wherein he testified that as of that time the only car his wife owned was a 1953 Mercury, which was really the property of the bankrupt's son. If anything on this score was asked in the supplementary proceedings examination of the bankrupt in July, 1961 it remains undisclosed on this motion.

But even assuming that the two 1957 cars, although in the wife's name, were purchased with the bankrupt's funds and were therefore his assets undisclosed in the schedules filed by him, their small value would not warrant the reopening of the estate. Cf. In re M. E. Smith & Co., Inc., 52 F.2d 212, 216 (D.Neb.1931) which, while it dealt with a small claim unpaid, supplies the yardstick where as here only a small asset is involved.

Finally, the moving papers contain nothing to explain the government's failure to appear at the first meeting of the creditors and examine the bankrupt. They contain nothing to explain the government's failure to file a proof of claim. In this regard it may be noted that pursuant to Section 57, sub. n of the Bankruptcy Act, Title 11 U.S.C.A. § 93, sub. n, the government had six months from September 28, 1961 to file its proof of

claim and this notwithstanding that the estate was closed by the referee on December 4, 1961. This practice is regularly employed in "no asset" cases without reopening them.

In the light of the foregoing, I am of the view that the government has failed to establish good cause sufficient for the exercise of my discretion in reopening this proceeding.

Accordingly, the application is denied.

It is so ordered; no further order is necessary.