## In re SEARLES.
## No. 944.

District Court, E. D. New York.
Oct. 10, 1946.

Bernard Cowen, of New York City, for Chase Nat. Bank of City of New York.

KENNEDY, District Judge.

This is a motion to confirm a report of Hon. Samuel C. Duberstein, sitting as a Special Master.

On April 3, 1901, Searles was adjudicated bankrupt in this Court, and on June 5, 1901, George D. Beattys was duly appointed trustee of the estate. One of the claims filed was in behalf of American Deposit and Loan Company. The Equitable Trust Company of New York became the owner of this claim as successor to American Deposit and Loan Company, and, in turn, Chase National Bank of the City of New York, the petitioner in this proceeding, acquired the claim as successor in interest to Equitable Trust Company of New York.

On April 12, 1912, the Equitable Trust Company consented to the reduction of the amount set forth in the proof of claim to $86,528.95, and the claim was ultimately allowed in that amount.

On April 15, 1913, a first and final dividend of .0704% was declared, the Equitable Trust Company receiving $6,091.57.

On January 4, 1916, the trustee filed a report that the checks drawn to creditors in a total amount of $1,445.84 had not been returned, and accordingly he deposited that amount with the Clerk of the Court, Bankruptcy Act of 1898, Sec. 66. sub. a, 11 U.S.

C.A. § 106, subd. a. After more than five years had elapsed the Clerk of this Court remitted the same amount to the Treasury of the United States to be held pending the further order of the Court, 28 U.S.C.A. §§ 851, 852. Petitioner on May 10, 1946, moved for an order directing the distribution of these unclaimed funds "among the creditors of the bankrupt who may become parties to this proceeding" with the petitioner, on the alleged authority of the Bankruptcy Law of 1938, Sec. 66, sub. b, 11 U.S.C.A. § 106, sub. b (I have quoted the entire section in the margin.[1])

On May 29, 1946, an order was entered referring the matters in the petition to Hon. Samuel C. Duberstein, one of the referees in bankruptcy of this Court, to sit as Special Master, to take proof, and to report. It is this report that I am now asked to confirm.

After setting forth the facts I have mentioned, the Special Master, on the basis of proof taken at the hearing before him, makes mention of the fact that on February 5, 1946, the State of New York through its Attorney General instituted a proceeding in the Supreme Court of the State of New York, County of Kings, against the Clerk of this Court, the object of which was to declare this fund escheated to the state under the New York State Abandoned Property Law, Consol.Laws c. 1, Article XII, Sections 1201, 1210. The Special Master finds as a fact that petitioner in the present proceeding has rebutted any presumption of abandonment, and that there has never been any adjudication of escheat.

Prior to the hearing, the Special Master published notices in the Brooklyn Daily Eagle and the New York Law Journal calling upon all persons interested in the Searles bankruptcy as creditors with proved claims or otherwise to attend and become parties to the proceedings if they wished to obtain any benefits from the unclaimed dividends under the applicable statutes, 11 U.S.C.A. § 106, sub. b, and 28 U.S.C.A. § 852. No one did attend but the petitioner, and the referee's conclusion is that petitioner is therefore entitled to the full amount of the unclaimed dividends now on deposit in the Treasury of the United States.

Two propositions seem to be clearly established by the cases: (1) That the District Court has full power to order payment of funds like this even after they have been deposited in the Treasury (In re MacMasters, S.D.N.Y., 1945, 60 F.Supp. 733), and (2) that after a distribution of unclaimed dividends has been made the dilatory creditor (who failed to collect it in the first instance) has finally lost his share (In re Gubelman, 2 Cir., 1935, 79 F.2d 976).

Petitioner, principally on the basis of two District Court decisions, now urges that the statute operates to exclude not only creditors who were dilatory in that they failed to deposit their original dividend checks, but also creditors having proved claims who did collect their shares of the first dividend, but who failed to appear in the proceeding under the unclaimed dividend statute, 11 U.S.C.A. § 106, sub. b. With respect to the class last mentioned, petitioner's argument is that by failing either to petition under the statute or to join in the proceeding, they too must be excluded and the whole deposit given to the petitioner.

I can find nothing in the language of the statute to warrant this position. The language is plain. The act says that unclaimed dividends, after the lapse of one year, "shall, under the direction of the court, be distributed to the creditors *whose claims*

---

[1] "§ 106. Unclaimed moneys

"a. Dividends or other moneys which remain unclaimed for sixty days after the final dividend has been declared and distributed shall be paid by the trustee into the court of bankruptcy; and at the same time the trustee shall file with the clerk a list of the names and post-office addresses, as far as known, of the persons entitled thereto, showing the respective amounts payable to them.

"b. Dividends remaining unclaimed for one year shall, under the direction of the court, be distributed to the creditors whose claims have been allowed but not paid in full, and after such claims have been paid in full the balance shall be paid to the bankrupt: Provided, That, in case unclaimed dividends belong to minors, such minors may have one year after arriving at majority to claim such dividends. As amended June 22, 1938, c. 575, § 1, 52 Stat. 875."

*have been allowed but not paid in full"* (emphasis mine). Petitioner finds support for its argument in an unreported opinion filed on July 30, 1917, in the Southern District of New York (Matter of Paulding) and also in the MacMasters case, cited above. It is plainly stated in the Paulding opinion, which is very brief, that the distribution would not be decreed upon the "original claims." No specific reference is made to any statute and there is nothing to indicate how the Court reached that conclusion except the suggestion that a further distribution to the original claimants would mean "holding up this estate indefinitely."

In the only written opinion in the MacMasters case, Judge Caffey decided three points (60 F.Supp. 733, 734) : (1) That the State of New York has no title to abandoned monies unless there has been an adjudication of escheat, (2) that the District Court has power to order a distribution of funds on deposit with the Treasury, and (3) that the duty of the District Court to distribute is mandatory. However, the subsequent history of the case shows that after the Special Master's report was confirmed an order was entered (October 11, 1945, Bankruptcy 31564, S.D.N.Y.) directing that the single petitioning creditor receive the entire balance originally remitted to the Treasury Department.

I am fully conscious of the difficulties that would be eliminated if this procedure is permissible under the statute. Its desirability is well illustrated by the proceeding at bar, because the dividend sheet shows not only that a great many of the creditors filed claims in trifling amounts, but also that many of them were residents of tiny mining towns in Oregon and Idaho, towns which doubtless no longer exist.[2] Moreover, Congress has not seen fit to provide even any suggestion as to the mechanics of the distribution to be made, except that the Court shall make it. It has said merely that the distribution shall be "to the creditors whose claims have been allowed but not paid in full." But here I am being asked to give the entire balance to one of those creditors. There is something like internal evidence in the statute that Congress did not intend any such result as that for which petitioner here contends. It is to be found in the proviso that minors may have one year after arriving at majority to claim such dividends. Thus even the doctrine of In re Gubelman, supra, that the dilatory creditors have forfeited any claim to the unclaimed dividends, has at least one exception, i.e., in the case of minors.[3] There is no specific suggestion or warning in the statute that creditors who were not dilatory (i.e., those who filed their claims, procured them to be approved, and accepted in cash their dividend checks) lose their rights if they do not participate in the proceeding to distribute again, which is the entire basis of this application.

The report which I am asked to confirm contains no facts concerning the relation of the unclaimed dividends to the estate as a whole, nor any basis upon which I can allocate to the petitioner its proper proportionate share of these unclaimed dividends. Under all the circumstances, I will therefore re-refer the matter to Hon. Samuel C. Duberstein for a supplemental report on the basis of which an order can be made which will comply strictly with the language of the statute.

---

[2] On the other hand, several of the creditors whose rights petitioner now seeks to cut off are obviously going concerns, presently engaged in business in New York, e. g., Metropolitan Life Ins. Co., New York Telephone Co., etc. (Dividend sheet, filed May 10, 1913).

[3] Of course, here the proviso could not operate, because more than 22 years have elapsed since the original distribution. I mention it merely for this reason: if Congress, amending the statute in 1938, after the Gubelman decision, reiterated a clause saving unclaimed dividends for one class of dilatory creditors (minors) it can hardly be supposed that its intention was to forfeit the rights of zealous creditors (i. e., those who cashed their dividend checks).