## In re SEARLES.

### No. 128, Docket 20815.

Circuit Court of Appeals, Second Circuit.

Feb. 18, 1948.

FRANK, Circuit Judge, dissenting.

————◆————

Bernard Cowen, of New York City, for appellant.

No appearance in opposition.[1]

Before SWAN, CHASE and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This appeal raises an interesting question concerning the distribution of unclaimed dividends in a bankrupt's estate closed many years ago.

The facts are as follows: Searles was adjudicated bankrupt in 1901; 12 years later a first and final dividend of 7.04 per cent. was declared on allowed claims; dividend checks totaling $1,445.84 were never presented by the creditors in whose favor they were drawn. In 1915 the trustee paid the unclaimed dividends into court as required by section 66, sub. a of the Act, 11 U.S.C.A. § 106 sub. a, filed his final report and obtained an order of discharge. In 1921 the money was deposited with the Treasurer of the United States in compliance with 28 U.S.C.A. § 852, and there it remained without any one making claim thereto until the state of New York by its

---

[1] In compliance with 28 U.S.C.A. § 852, notice of the petition was given to the United States Attorney for the Eastern District of New York. He appeared below but presented no brief or argument on the appeal.

Attorney General instituted on February 5, 1946 a proceeding in a court of the state pursuant to the New York Abandoned Property Law, Consol.Laws, c. 1, § 1202. That proceeding was dismissed as to the fund in Searle's estate and is not material to the present proceeding. This was initiated by the Chase National Bank pursuant to 28 U.S.C.A. § 852 and section 66, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 106, sub. b. The first mentioned statute contains the following provision: "Any person or persons * * * entitled to any such money may, on petition to the court from which the money was received * * * and upon notice to the United States attorney and full proof of right thereto, obtain an order of court directing the payment of such money to the claimant, * * *." Section 66, sub. b of the Bankruptcy Act, printed in the margin,[2] provides that after dividends have remained unclaimed for one year they shall be distributed, under the court's direction, to those creditors who have not been paid in full, or to the bankrupt. The appellant had succeeded to the rights of a creditor whose claim against the bankrupt was allowed in the sum of $86,528.95 and on which only the dividend of some $6,000 was paid. On May 9, 1946 it filed in the bankruptcy court a petition for an order of distribution and gave notice thereof to the United States Attorney. The court referred the petition to a special master "to take proof and report to the Court thereon, with particular reference to the interest of said petitioner, and that of any other proved creditor of said bankrupt appearing in and becoming a party to the petitioner's proceeding herein with respect to the unclaimed dividends heretofore remitted by the Clerk of this Court to the Treasurer of the United States and by the latter held subject to the further order of this Court."

The order of reference also provided that the petitioner indemnify the special master for necessary costs and charges to the extent of $100. The special master caused notice of a hearing to be published in two newspapers,[3] took proof, and reported that only the petitioner and the United States Attorney had appeared before him and that the petitioner was entitled to the whole amount on deposit. On motion to confirm the report, the district judge ordered a supplemental report on the basis of which the petitioner's pro rata share of the unclaimed dividends could be determined, In re Searles, D.C., 68 F.Supp. 678, and, when this came in, made the order now before us. It forfeits the rights of those creditors who failed to collect the dividends declared to them in 1913, totaling $1,445.84, and directs the Treasurer of the United States (1) to pay therefrom $100 to the special master for his services, $71.45 to the petitioner for its disbursements, and $89.72 to the petitioner, representing 7.04 per cent. of the fund remaining after making the first two payments, and (2) to retain the balance of the fund for the benefit of the other proved creditors of the bankrupt to await applications by them for payment of their pro rata shares of said balance.

Although section 66, sub. b has existed without any material change since enactment of the Bankruptcy Act in 1898, the question whether the fund resulting from failure of creditors to claim their dividends within a year should be distributed pro rata to all other proved creditors or only to those who join in the proceeding, seems never before to have been raised in an appellate court. Several unreported cases in the southern district of New York and two which are reported have held, contrary to the case at bar, that the fund should go to the creditors who become par-

---

[2] 11 U.S.C.A. § 106, sub. b: "Dividends remaining unclaimed for one year shall, under the direction of the court, be distributed to the creditors whose claims have been allowed but not paid in full, and after such claims have been paid in full the balance shall be paid to the bankrupt: Provided, That, in case unclaimed dividends belong to minors, such minors may have one year after arriving at majority to claim such dividends."

[3] See section 58, sub. d, 11 U.S.C.A. § 94 sub. d. The district court's opinion contains no criticism of service of notice by Publication. In re Searles, D.C., E.D. N.Y., 68 F.Supp. 678. The appellant of course does not question its sufficiency and, as no one has appeared in opposition, the point has not been argued.

ties to the petition for distribution. In re Raabe, Glissman & Co., D.C., S.D.N.Y., 71 F.Supp. 678; In re MacMasters, D.C., S.D.N.Y., 60 F.Supp. 733.[4] The section was considered by this court, though not with reference to the precise point now presented, in In re Gubelman, 2 Cir., 79 F.2d 976; cf. 45 Yale L.J. 714. We noted, 79 F.2d at page 977, that the statute does not declare on whose motion the unclaimed dividends are to be distributed, and observed: "Perhaps the court can distribute sua sponte; perhaps a single creditor may move for itself and for all others; but, since distribution will ordinarily involve substantial clerical work, practically it is not likely that any one will get his share who does not move."

The suggestion that the court might make the distribution sua sponte was there relevant because the unclaimed dividends were still on deposit in the court. After they have been remitted to the Treasury, section 852 of Title 28 plainly indicates that the proceeding for distribution shall be initiated by some person "entitled to any such money," i. e., a creditor whose allowed claim has not been fully paid.

▮▮▮ Section 66, sub. b not only provides that unclaimed dividends "shall * * * be distributed" but also provides for their distribution to a designated class of creditors and for payment of any balance, after that class has been paid in full, to the bankrupt. It seems to contemplate that the order of distribution will completely dispose of the fund and leave nothing on deposit in the court. That such was its purpose was the opinion expressed in Collier on Bankruptcy, 13th Ed., § 66, and by dictum in In re Fielding, D.C., W.D.Mo., 96 F. 800, 803. After money in the registry of the court is remitted to the Treasury pursaunt to 28 U.S.C.A. § 852 the interest of the Government is that of a statutory trustee for such persons as the court of bankruptcy may determine to be entitled to it. See United States v.

Cochrane, 5 Cir., 87 F.2d 3, 4. The beneficiaries of the trust are the creditors designated in § 66, sub. b. This does not designate all creditors whose claims were proved and allowed but only such of them as have not been paid in full. Hence the members of the class, except the appellant, are unknown, because conceivably creditors receiving only partial payment by way of dividends in bankruptcy may otherwise have been paid in full. The appellant's petition claimed the fund for itself and all other members of the class who might join in the proceeding and establish their rights. They were given notice by publication and failed to appear.[5] In Richmond v. Irons, 121 U.S. 27, 66, 7 S.Ct. 788, 30 L.Ed. 864, it was held that no person is entitled to share as a creditor in the distribution under a creditor's bill, who does not come forward to present his claim. See also Louisville & N. R. Co. v. Robin, 5 Cir., 135 F.2d 704, 706 and cases there cited. We see no reason why this principle is not applicable to the present equitable proceeding. On the evidence presented to the special master, the only creditor proved to have any interest in the fund was the appellant and, since the fund was less than enough to pay its allowed claim in full, the appellant should be awarded the whole fund, as was done in In re Raabe, Glissman & Co., D.C., S.D.N.Y., 71 F.Supp. 678.

The order is modified to direct the Treasurer of the United States to pay the balance of the fund to the appellant.

FRANK, Circuit Judge (dissenting).

I agree with my colleagues except as to one item, i. e., the sufficiency of the notice.

The notice was solely by publication. Nothing in the record discloses any good reason for not sending notice by mail to all creditors whose claims had been allowed, at their last-known addresses as shown in the bankruptcy proceedings. It is suggested that such notices would mislead because the record does not reveal which of

---

[4] The actual order directing that the single petitioning creditor receive the entire balance does not appear in the reported opinion; it was made later (Bankruptcy No. 31,564, S.D.N.Y., October 11, 1945).

[5] We assume without decision that the notice was sufficient to preclude creditors who did not appear. See note 3 supra.

such creditors had not been paid in full. But notice by publication is open to the same objection. The short answer is that the notices could and should state that no creditor may participate without proving that he had not received full payment (and then only to the extent of his unpaid balance) and that the mere giving of the notice indicates nothing as to the rights of any creditor.

As my colleagues intimate (see their note 3), the notice by publication was given in reliance upon 11 U.S.C.A. § 94, sub. d. But that subsection, after providing that some kinds of notice "may be published," adds: "Other notices may be published as the court shall direct." Here the court did not direct the giving of notice by publication. That notice was given by the Special Master on his own motion. So that, even, assuming arguendo, that 11 U.S.C.A. § 94, sub. d authorizes that sort of notice, when ordered by the court, here that provision is inapplicable.

Louisville & N. R. Co. v. Robin, 5 Cir., 135 F.2d 704, 705, 706, if sound, is not, I think, in point. It dealt with a fund resulting from a sale on foreclosure of a railroad mortgage securing bonds, not with the estate of a bankrupt, having known creditors and subject to the provisions of the Bankruptcy Act. The court in the Robin case relied on 28 U.S.C.A. § 118, saying that it "appears to afford a statutory basis for the service by publication of persons having a lien on the fund." Whether that section was applicable there, or is applicable here, I am not at all sure. But, if we assume that it applies here, then it should be noted that 28 U.S.C.A. § 118 expressly provides for personal service "if practicable," and for notice by publication only where "personal service * * * is not practicable."[1] It may well be that, in the Robin case, the potential claimants were all holders of bearer bonds whose addresses were never known.[2] As the district judge here, on other grounds which I agree are insufficient, denied the relief sought by the petitioner, the judge never reached the issue of the sufficiency of the notice.[3] That, accordingly, he did not question its adequacy, and that no one else has raised the question, is no good reason why we should fail to do so.

An order by the judge directing notice solely by publication would perhaps not be an abuse of discretion, were the fund so small as to render unreasonable the expense of mailing notices. But that is not this case. It seems to me that here the slight delay and expense involved in mailing notices, in addition to publication, should be required in order to prevent an unequitable distribution. I would therefore remand with directions to give such notices.

---

[1] Moreover, it provides that, if a person not personally served appears within one year, the court shall set aside the judgment and permit such person to participate as if no judgment had been entered.

[2] In the Robin case, the court cited St. Louis & S. F. R. Co. v. Spiller, 274 U.S. 304, 313, 47 S.Ct. 635, 71 L.Ed. 1060. I think that that case may mislead, if not carefully read. See Frank, Some Realistic Reflections on Some Aspects of Corporate Reorganizations, 19 Va.L.Rev. (1933) 698, 703-705. See ibid. 705-707, and Employers' Liability Assurance Corp. v. Astoria Mahogany Co., 2 Cir., 6 F.2d 945, 946, to the effect that the purpose of a "barring order" is to protect the stakeholder, not to benefit the creditors who appear.

[3] For no notice to creditors was necessary under the judge's decision that petitioner receive only the pro-rata share to which he would be entitled if all the creditors appeared.