243 F.2d 443
 Matter of MONEYS DEPOSITED IN AND NOW UNDER THE CONTROL OF
THE UNITED STATES DISTRICT COURT FOR THE WESTERN
DISTRICT OF PENNSYLVANIA, Escheated to
the Commonwealth of Pennsylvania.
Appeal of the UNITED STATES of America.
 No. 12061.
 United States Court of Appeals Third Circuit.
 Argued March 7, 1957.
Decided April 22, 1957.
 
 Paul A. Sweeney, Attorney, Department of Justice, Washington, D.C., (George Cochran Doub, Asst. Atty. Gen., D. Malcolm Anderson, Jr., U.S. Atty., Pittsburgh, Pa., John G. Laughlin, Attorney, Department of Justice, Washington, D.C., on the brief), for appellant.
 A. Jere Creskoff, Philadelphia, Pa. (Harry M. Jones, Pittsburgh, Pa., Michael Edelman, Philadelphia, Pa., on the brief), for the Commonwealth of Pennsylvania.
 Before MARIS, GOODRICH and HASTIE, Circuit Judges.
 MARIS, Circuit Judge.
 
 
 1
 This is an appeal by the United States from an order by the District Court for the Western District of Pennsylvania directing payment to the Escheator of the Commonwealth of Pennsylvania of certain moneys on deposit in the registry of the district court and in the treasury of the United States representing unclaimed dividends in bankruptcy proceedings in that court.
 
 
 2
 On June 16, 1953, the Court of Common Pleas of Allegheny County, Pennsylvania, entered a decree declaring that certain unclaimed dividends in bankruptcy and equity proceedings in the District Court for the Western District of Pennsylvania had under the laws of Pennsylvania[1] escheated to the Commonwealth by virtue of the fact that the rightful owners thereof had been unknown for the space of seven years or more. The decree authorized the Escheator of the Commonwealth to apply to the district court for an order directing payment of the funds to him. Accordingly, on June 18, 1953 the Escheator filed a petition in the district court seeking such order. The United States appeared and moved for summary judgment which was denied. 135 F.Supp. 55. The United States then filed an answer to the petition in which it denied the power of the Pennsylvania court to decree the escheat to the Commonwealth of the unclaimed bankruptcy dividends.[2] No objection was made to the escheat of the unclaimed funds in the equity cases. After a trial on the merits the district court filed findings of fact and conclusions of law in favor of the Commonwealth's Escheator. Thereafter on March 29, 1956 an order was entered directing that the unclaimed dividends in equity cases amounting to $4,947.21 be paid to the Escheator. Finally on July 6, 1956 an order was entered directing payment to the Escheator of the unclaimed bankruptcy dividends amounting to $2,468.93.[3] It is from this last order that the United States has appealed.
 
 
 3
 It is settled that a state may constitutionally direct the escheat of unclaimed money which has been deposited in the registry of a federal court sitting in the state and may do so even though the money has been subsequently deposited in the United States treasury pursuant to the federal statute.[4] For although such subsequent deposit in the federal treasury is required by the statute to be 'in the name and to the credit of the United States' the fact is that the United States has no beneficial interest therein but holds the money as statutory trustee for the rightful owners when and if they are determined by the court. United States v. Klein, 1938, 303 U.S. 276, 58 S.Ct. 536, 82 L.Ed. 840; United States v. Klein, 3 Cir., 1939, 106 F.2d 213, certiorari denied 308 U.S. 618, 60 S.Ct. 295, 84 L.Ed. 517; In re Searles, 2 Cir., 1948, 166 F.2d 475, 477, 4 A.L.R.2d 1431. And such a decree for escheat, while not equivalent to an assignment, In re Thompson's Estate, 3 Cir., 1951, 192 F.2d 451, 453, is undoubtedly an adjudication that the state is entitled as parens patriae to assert the claim of the missing claimant to the moneys in question in the absence of the claimant and of anyone else competent to inherit the claim. United States v. Klein, 1938, 303 U.S. 276, 282, 58 S.Ct. 536.
 
 
 4
 It is urged, however, that in the case of unclaimed bankruptcy dividends, which are the only funds here in controversy, the provisions of section 66 of the Bankruptcy Act, 11 U.S.C.A. § 106, stand in the way of the Escheator's claim. In 1953, when the decree declaring the escheat was entered by the state court, section 66 provided:
 
 
 5
 'Sec. 66. Unclaimed Moneys.-- a. Dividends or other moneys which remain unclaimed for sixty days after the final dividend has been declared and distributed shall be paid by the trustee into the court of bankruptcy; and at the same time the trustee shall file with the clerk a list of the names and post-office addresses, as far as known, of the persons entitled thereto, showing the respective amounts payable to them.
 
 
 6
 'b. Dividends remaining unclaimed for one year shall, under the direction of the court, be distributed to the creditors whose claims have been allowed but not paid in full, and after such claims have been paid in full the balance shall be paid to the bankrupt: Provided, That, in case unclaimed dividends belong to minors, such minors may have one year after arriving at majority to claim such dividends.'
 
 
 7
 It will be observed that subdivision b of section 66 at that time provided that dividends unclaimed for a year should be distributed to other creditors or, after the latter were paid in full, to the bankrupt. The contention is that this directive of the Bankruptcy Act as to the way in which a bankrupt's estate should be distributed among his creditors was then controlling and precluded the Commonwealth, by virtue of a decree declaring an escheat, from coming in upon the fund in the right of the creditors who had failed to claim their dividends for seven years or more. This contention has been upheld by this court in a case where other creditors were actually claiming the fund under subdivision b of section 66. In re Thompson's Estate, 3 Cir., 1951, 192 F.2d 451. See also Corn Exchange Bank Trust Co. v. Empire Trust Co., 2 Cir., 1953, 206 F.2d 30. However, where, as here, no other creditors and none of the bankrupts have claimed any of the funds sought to be escheated it may well be doubted whether the United States has standing to oppose the claim. For, as we have pointed out, it claims no beneficial interest for itself. And certainly if one of the missing creditors had appeared after the expiration of the year specified in subdivision b of section 66 he would have been entitled to the money deposited as a dividend on his claim to the extent that it had not actually been claimed by and distributed to other creditors. In re Gubelman, 2 Cir., 1935, 79 F.2d 976. There would accordingly seem to be much force in the Escheator's argument that under the same circumstances he should be entitled to enforce the Commonwealth's claim pursuant to the decree declaring the escheat. The district court was of this view in the present case. And see in this connection the thoughtful discussion of the matter by Judge Kaufman in Application of People of the State of New York, D.C.N.Y.1956, 138 F.Supp. 661.
 
 
 8
 We need not pursue this question further, however, in view of the fact that subdivision b of Section 66 was repealed on August 1, 1956, after the entry by the state court of its decree declaring the escheat but before any of the funds in controversy had actually been distributed. For this was a purely procedural statute, providing merely for the marshalling of assets for the purpose of paying the creditors of a bankrupt in the order in which Congress in the exercise of its bankruptcy power thought proper. It had nothing to do with determining the validity of the claims of creditors or the rights of persons asserting them. No rights vested under it to unclaimed moneys which remained in the treasury when it was repealed. In re M. E. Smith & Co., D.C.Neb.1931, 52 F.2d 212, 216; In re Gubelman, 2 Cir., 1935, 79 F.2d 976. As a purely procedural statute which is no longer in force it can not now be applied with respect to the distribution of the funds in controversy in this case which still remain undistributed in the federal treasury.
 
 
 9
 By the Act of August 1, 1956, c. 819, 70 Stat. 785, subdivision b of section 66 of the Bankruptcy Act was repealed, as we have said, and subdivision a of that section was amended to read as follows:
 
 
 10
 'Sec. 66. Unclaimed Moneys.-- a. Dividends or other moneys which remain unclaimed for sixty days after the final dividend has been declared and distributed shall be paid by the trustee into the court of bankruptcy; and at the same time the trustee shall file with the clerk a list of the names and post-office addresses, as far as known, of the persons entitled thereto, showing the respective amounts payable to them. Such moneys and dividends shall be deposited and withdrawn as provided in title 28, United States Code, section 2042, and shall not be subject to escheat under the laws of any State.'
 
 
 11
 A change in the applicable law which takes place after an order appealed from has been entered must nonetheless be given its appropriate effect by the appellate court. United States v. The Schooner Peggy, 1801, 1 Cranch. 103, 5 U.S. 103, 110, 2 L.Ed. 49; Vandenbark v. Owens-Illinois Glass Co., 1941, 311 U.S. 538, 543, 61 S.Ct. 347, 85 L.Ed. 327; Ziffrin, Inc., v. United States, 1943, 318 U.S. 73, 78, 63 S.Ct. 465, 87 L.Ed. 621. Accordingly for the reasons already stated we think that it is section 66 as thus amended and presently in force which must be considered in determining the case before us.
 
 
 12
 It will be observed that section 66 as now in force makes no provision whatever for the distribution of unclaimed dividends or other moneys to anyone except the persons originally entitled thereto. The provisions of former subdivision b of that section for alternative distribution to other unpaid creditors or, if they are paid in full, to the bankrupt have been wholly eliminated. But while such funds if unclaimed for five years are to be deposited in the federal treasury to the credit of the United States under section 2042 of title 28, the United States still makes no claim of title to them and they are still to be withdrawable under that section by a claimant entitled thereto if and when the district court so orders. Thus it will be seen that except for its final clause, which we are about to discuss, amended section 66 presents no bar to the Escheator's claim.
 
 
 13
 The United States urges that the final clause of section 66 absolutely bars the claim of the Commonwealth's Escheator. As we have seen, this clause states that such unclaimed moneys 'shall not be subject to escheat under the laws of any State.' Here is indeed an express denial to the states of the right to escheat unclaimed bankruptcy moneys and if it is valid and applicable it undoubtedly bars the present claim.
 
 
 14
 The Escheator vigorously urges, however, that this statutory bar to escheat by a state of unclaimed bankruptcy funds is unconstitutional. He asserts that the power to escheat unclaimed property is a sovereign power, a prerogative of the English crown which devolved upon the people of Pennsylvania when the province secured its independence from England and became a sovereign state, and that this power as parens patriae to escheat unclaimed property within the state was not delegated by the Constitution to the federal government. Nor, says the Escheator, has the power to escheat property ever been successfully asserted by the federal government. He points to the Act of February 19, 1897, c. 265, § 3, 29 Stat. 578, which amended section 996 of the Revised Statutes so as to provide that money deposited in court and unclaimed for ten years or longer should be 'deposited in a designated depository of the United States, to the credit of the United States', and calls attention to the fact that after that statute was held unconstitutional in American Loan & Trust Co. v. Grand Rivers Co., C.C.Ky.1908, 159 F. 775, as depriving claimants of their property without due process of law, it was amended by the Act of March 3, 1911, c. 224, 36 Stat. 1083, so as to provide that any person entitled to the money so deposited to the credit of the United States might obtain an order for its payment to him. A similar provision has been continued in section 2042 of title 28, the successor of section 996, Revised Statutes.
 
 
 15
 The Escheator urges that amended section 66, by requiring unclaimed bankruptcy funds to be held in the federal treasury in perpetuity without the possibility of escheat to the state if the missing claimant does not appear, has in practical effect provided for the escheat of these funds to the United States, thereby transferring the power to escheat them from the Commonwealth of Pennsylvania to the United States in violation of the Tenth Amendment. To the argument of the United States that the denial of the right to escheat unclaimed bankruptcy funds is a valid exercise of the federal bankruptcy power the Escheator replies that the bankruptcy power does not give to Congress the right to supersede or alter state law with respect to the ownership of claims against a bankrupt or the transfer of interests in such claims by escheat or otherwise.
 
 
 16
 It will be seen that a serious question is presented as to the constitutional validity of the ban imposed by section 66 upon the escheat by the states of unclaimed bankruptcy funds. And the constitutional validity of this denial by section 66 of the power of escheat would be even more doubtful if it were to be construed as applicable to the distribution to a state of funds which, as in the present case, had been escheated by the state prior to its passage. For in that event it would render invalid the decree of the state court declaring the escheat which was valid when it was entered.[5] However, a statute is always presumed to operate prospectively where, as here, there is no clear expression in it to the contrary. Hassett v. Welch, 1938, 303 U.S. 303, 314, 58 S.Ct. 559, 82 L.Ed. 858. And a prospective construction is the more appropriate where as here it will eliminate a serious question of constitutional validity which would arise if the statute were to be given retroactive effect. Arkansas Natural Gas Co. v. Arkansas Railroad Comm., 1923, 261 U.S. 379, 43 S.Ct. 387, 67 L.Ed. 705; Anniston Mfg. Co. v. Davis, 1937, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143. We are constrained, therefore, to hold that the denial by amended section 66 of the right of the states to escheat unclaimed bankruptcy funds does not apply retroactively to the escheat of such funds which is involved in this case which was decreed long before the amendment was enacted. Whether prospectively applied the denial of this right of escheat is valid we need not decide. That question must be left for another day. It is sufficient for the decision of this case to hold, as we do, that under amended section 66 the funds here in question may be withdrawn as section 2042 of title 28 provides, on order of the district court, by the parties entitled thereto, that the Escheator of the Commonwealth of Pennsylvania as successor in interest of the original claimants is a party entitled to the funds which have been awarded to him by the district court, and that the final clause of amended section 66 does not retroactively render invalid that award or the escheat upon which it was founded.
 
 
 17
 The order of the district court will be affirmed.
 
 
 
 [1]
 Sections 2 and 5 of the Act of May 2, 1889, as amended, 27 P.S. (Pa.) §§ 334, 41
 
 
 [2]
 The United States also asserted in its answer that adequate notice had not been given to the persons whose moneys were declared escheated. This defense, however, appears not to have been pressed in the district court and has not been seriously pressed by the United States in this court
 
 
 [3]
 $20.17 of this amount is still on deposit in the registry of the district court and $2,448.76 is on deposit in the treasury of the United States
 
 
 [4]
 Formerly § 996, Revised Statutes, now 28 U.S.C. § 2042
 
 
 [5]
 As between the Commonwealth and the absent claimants the decree was valid regardless of whether it was then enforceable in the district court to secure a distribution of the unclaimed moneys. United States v. Klein, 1938, 303 U.S. 276, 282, 58 S.Ct. 536